Wright v. Tinsley.

———◦◦◦◦————

WRIGHT, as TRUSTEE, &c., Plaintiff in Error, v. TINSLEY et al., Defendants in Error.

1. A person with whom a contract is entered into for the benefit of another may sue in his own name in enforcement of such contract without joining with him such other person; he is a trustee of an express trust within the meaning of the second section of the second article of the practice act. (R. C. 1855, p. 1217.) He may, or may not, join the beneficiary as a party in the suit.

2. An agreement to dispose of property by will in a particular way, if made on a sufficient consideration, is valid and binding.

3. Although circumstances may render it impossible to specifically enforce such an agreement exactly, yet its substantial specific enforcement will be decreed.

*Error to Callaway Circuit Court.*

Demurrer to a petition. The petition is entitled thus: "Henry T. Wright, who sues as trustee for the use and benefit of Archie G. Dawson, administrator of the estate of Mary Dawson, deceased, plaintiff, against Abram Tinsley," &c. The defendants are the executors of the will of Caleb Tinsley, deceased, and his devisees and heirs. The petition sets forth, in substance, that said Caleb Tinsley, late of Audrain county, Missouri, died in 1853, possessed of a large estate, consisting of land, negroes, choses in action, and personal property, of the value of $15,000; that said Caleb Tinsley left a will, which was duly admitted to probate; that he bequeathed his estate as follows: to his daughter Frances Childs, one-third of the negroes and money, and a house and lot in Boonville, Mo.; to his grandchildren, the children of

his daughter Mildred Sampson, one-third of his negroes, all the notes held by the said Caleb on their father John Sampson, and such an amount of money as would make their share equal to one-third part of said estate; to his son Abram Tinsley, a wagon and team, all the farming utensils, and the remaining third of the negroes, and money sufficient to make his share equal to a third part of said estate; that said legatees (defendants in the suit) were all the children and grandchildren of the said Caleb Tinsley, deceased, except Peachy, the wife of Henry T. Wright, plaintiff, who died prior to the death of the said Caleb, leaving a daughter, Mary Elizabeth, wife of Archie G. Dawson; " that prior to the decease of the said Caleb, that is to say, sometime in the year 1847, the said Caleb Tinsley was desirous of settling up his affairs with his children, in order that he might ascertain the amount advanced to each, so as to make an equal and impartial distribution of the property which he might die possessed of; and he was particularly desirous of having a settlement with the plaintiff Henry T. Wright, to whom the said Caleb Tinsley owed a balance of $900 upon indebtedness which accrued against the said Caleb in favor of the said Henry T. Wright through several years' dealing. The said Caleb refused and objected to paying to the said Wright any portion of the said claim; but the said Caleb having already executed his will, wherein he had made provision for the said Henry, in right of his said wife Peachy, equally with his other children, he proposed to the said Henry T. Wright, that if he would submit the matter to arbitrators, who would make an award agreeable to his wishes and direction, he agreed and promised that the said Wright should be a legatee and devisee, and share equally with his other children in his estate after his death. Plaintiff states that in order to procure the peace, harmony and good feeling of the family, and under the existing relationship between him and the said Caleb, and in order to secure to his said daughter Mary E., and her children, her equal share of the said estate with the other children of said Caleb, he agreed and consented to

waive his right and claims against the said Caleb and allow the same to be submitted to arbitrators, who were authorized to make an award agreeable to the feelings and dictation of the said Caleb; and the said arbitrators being chosen and duly apprised of the duties devolving upon them, and fully understanding the agreement, object and consideration of said arbitration, the said will being shown to them and the matter explained by the said Caleb, said arbitrators proceeded to adjust and settle the differences, and by their award found for the said Tinsley, who thereupon expressed himself satisfied with the same. Plaintiff states that he duly performed said award according to the requirements, by executing to the said Caleb a promissory note for the sum of four hundred and six dollars and fifty-six cents, being the amount received by the said Wright from the said Tinsley prior to the said arbitration as an advancement, the said note being by said award directed and required to be given, with the express understanding that the same should not be considered as an indebtedness by the said Wright to Tinsley, but to be held by the said Tinsley to show how much had been received by the said Wright of the estate of Tinsley, in order to make a proper deduction on a final distribution, so that each legatee should receive an equal portion. Plaintiff states that, after the making of said award, the said Caleb Tinsley destroyed the will he had made, wherein he had provided for the said Wright as aforesaid, and afterwards made another will, wherein he failed to make any provision whatever for the said Wright or his children, save and except that he bequeathed the note which he, Wright, had given to the said Tinsley for the sum of $406.56, and he, the said Wright, and his children were otherwise excluded from all and every benefit or participation in said estate, the same being bequeathed to the above defendants as above stated, a copy of which said will is herewith filed, the original not being, &c. Plaintiff states that all the debts of said estate have been fully paid off, discharged and satisfied, and that

after the payment of the same there was money and other property left subject to distribution of the value of $12,-000. The plaintiff proceeds to set forth the value of the interests actually received by the defendants as legatees under the said will of Caleb Tinsley, and also what there is still in the hands of the executor, Abram Tinsley. "Plaintiff prays that the said defendants be required to state severally and distinctly the amount of property and money received by them from said estate, and he prays that guardians *ad litem* be appointed for" certain of the minor defendants; "that the said executor, Abram Tinsley, be decreed and ordered to specifically execute and perform said contract so entered into by and between said Wright and the said Caleb in his lifetime; and he further prays that, in order to carry out the decree and judgment of the court, each defendant be decreed to contribute and refund such portion of the amount as may be fixed by the court to be one-fourth part of said estate, after deducting the debts, costs of administration, and the other costs and expenses incident to the settlement of said estate; and that said defendant be decreed to contribute in proportion to the respective amounts received by each, and plaintiff further prays," &c.

The defendants demurred to this petition. The following are the grounds of the demurrer: First, because the said H. T. Wright is improperly joined as a party plaintiff in said action; second, because if, as averred, the contract was made with and for the use of the said H. T. Wright, then A. G. Dawson, administrator, is improperly joined as a party, and the suit should have been brought in the sole name of H. T. Wright; thirdly, because there is no adequate consideration averred for the agreement sought to be enforced; fourthly, because the relief prayed for in the petition is impracticable, and this court has no power to decree a specific performance of the contract set out in the petition; fifthly, because the agreement set out relates to and concerns real estate, and the heirs of Mary Dawson should be made parties

plaintiff in the cause ; sixthly, because Archie G. Dawson is improperly joined as a party in this suit, there being no averment of his administration.

The court sustained the demurrer.

*Jones & Hayden*, for plaintiff in error.

I. The action was properly brought by Henry T. Wright in his own name as trustee, he being the trustee of an express trust. It is no cause of complaint, although it is stated, in the style of the suit, to be for the use of another. No part of the prayer of the petition asks a judgment in favor of Archie G. Dawson, administrator of Mary Dawson. A trustee may either sue in his own name or join the beneficiary with him ; in either case he controls the judgment, and the decree is in every instance made in favor of the trustee. The mere fact that Wright styles himself the trustee of Dawson, in the margin of the petition, does not constitute Dawson a party to the suit, it being a mere recital that could not affect the judgment in the cause. (R. C. 1855, p. 1207, sec. 2.)

II. The objection, that there was not an adequate consideration to support the contract, might be answered by stating that a court of equity will not look to the adequacy of the consideration unless there be such gross inadequacy as to raise the presumption of fraud. (Adams' Eq. 79.) There was an adequate consideration. Plaintiff placed his legal rights at the disposal of the arbitrators, who, knowing the inducements and promises held out to Wright, do in the premises just what Tinsley told them to do—to acquit and release him from the debt of nine hundred dollars, and award that Wright should execute his note for the amount advanced—in consideration of which he bound himself to make Wright equal with his other children in his will.

III. Equity will enforce the specific execution of all contracts which are based upon a valuable consideration, where the consideration has been received and enjoyed by the other party against whom the execution of the contract is sought,

providing said contract, in its terms or form, does not contravene some positive law. A court of equity, in administering relief in such a case, does not attempt to make a will for the party, but simply to carry out in good faith what the parties agreed upon. The objection that it would be making a will for the party against whom the execution of the contract is sought, if applied to this case, would be applicable alike to all other cases when the subject matter of the contract had been denied or bequeathed in violation of the contract to convey. In both cases it is the will of the testator that the devisee shall take the property, but it is in each the paramount will of the law that the contract to convey shall be carried out and the rights of the legatee or devisee are subordinate to the rights of the contractor, who, having paid his money alike in both cases on the faith of the fulfilment of the contract, is to all intents regarded as having the paramount claims of a creditor and the equitable owner of the property contracted for. (Newland on Contr. 111, 113, 114; 2 Story Eq. § 785, 786, 781; Dufour v. Ferard, 3 Vesey, 412, 416; Lord Walpole v. Lord Oxford, 3 Ves. 402; 8 Ves. 150; 6 Ves. 266; 7 Bligh, 53, 54; 9 Eng. Law & Eq. R. 136; Gilmore v. Battison, 1 Vern. 48; 3 Dessau. Ch. 195; 1 Dessau. 116.)

*Hardin*, *Gordon*, and *Guitar*, for defendants in error.

I. Admitting that the contract between Wright and Tinsley was for the use and benefit of Mrs. Dawson, Wright could not under our code sue; he was not a trustee of an express trust. (1 Menell's Prac. 324; Grinnell v. Schmidt, 2 Sandf. S. C. R. 706.) If living, Mrs. Dawson would alone be the competent party to enforce the contract; (R. C. 1855, p. 1218, § 7;) if dead, her administrator. (R. C. 1855, p. 132, § 23, 24.) If this suit is maintainable by Wright as trustee of A. G. Dawson as administrator of Mary Dawson, then we have the anomaly in our practice of one trustee suing to the use of another. Again, as there is no averment in the petition of her death and of the administration of A.

G. Dawson on her estate, he is improperly joined as a party to the action. But the contract was made with Wright and for his use and benefit. He is therefore the only real party plaintiff. (2 R. C. 1855, p. 1217, § 2.)

II. The specific performance of contracts of sale is not a matter of course, but rests entirely in the sound discretion of the court upon a view of all the circumstances. The exercise of this power has been refused where the inadequacy of the consideration was so great as to give the agreement the character of unreasonableness, inequality and hardship. (6 Johns. Ch. 222; Seymour v. Delancey, 9 Cond. Eng. Ch. 300; 10 Mo. 774.) And where it is not in the power of the defendant specifically to perform the contract, and this was known to plaintiff before the institution of his suit, the court will not decree performance, nor compensation in damages, but leave the party to his remedy at law for a breach of the contract. (McQueen v. Chouteau's Heirs, 20 Mo. 222; Hatch v. Cobb, 4 Johns. Ch. 559; Kenyshall v. Stone, 5 Johns. 193; Hartnett v. Fielding, 2 Sch. & Lefr. 554; Morse v. Elmendorf, 11 Paige's Ch. 277.)

III. The court committed no error in sustaining the demurrer. The petition is uncertain and indefinite. It does not show clearly what the contract between Wright and Tinsley was, nor what was the action of the arbitrators; nor was it framed with a view to damages for a breach of the contract. Pleadings must show specifically the cause of action and the relief sought.

EWING, Judge, delivered the opinion of the court.

The agreement which is sought to be enforced was entered into between Wright, the plaintiff, and Caleb Tinsley, deceased, and was, as is alleged, for the benefit of Wright's daughter, Mrs. Dawson, who was the grandchild of Tinsley. But it is maintained that, notwithstanding this was the nature of the agreement, Wright could not, under our code, sue, as he was not trustee of an express trust. A trustee of an express trust is defined by our statute to include a person

with whom or in whose name a contract is made for the benefit of another, and if the contract in question was for Mrs. Dawson's benefit, Wright obviously comes literally within this definition, and is the proper party plaintiff. If living, Mrs. Dawson would not be the proper party, for, although she might be beneficially interested, she could not sue, if the plaintiff, Wright, made the contract for her benefit, which fact constitutes him a trustee of an express trust. A trustee may, or may not, join the beneficiary in the suit; and it is no objection therefore that Dawson is named as the party for whose use the suit is prosecuted. Wright, as the trustee, is the real party to the suit, and it is exclusively within his control.

On principle, there would seem to be no ground to doubt that a person may, by valid agreement, renounce the power to dispose of his property at his pleasure ; may bind himself to make a will in a particular way on proper considerations ; and that courts of equity would enforce such agreements under proper circumstances, the same as in other cases of valid contracts. While in some of the cases cited the courts refused to decree a specific performance of the agreement, they all recognized the power of individuals to make binding contracts of this nature, and relief was denied on different considerations. A contract to lease by will for a good consideration will be enforced in equity. (Newland Com. 111, 113.) A contract, says Story, to make mutual wills, if one of the parties has died having made a will according to the agreement, will be decreed in equity to be specifically executed. (2 Story Eq. 785.) And upon a like principle an agreement by a father to give by will as much property to one child as another will be enforced. (Ib.) In Garlmen v. Battison, 1 Vern. 48, the heir at law, pretending a right to the land in question, came to the tenant in possession, who likewise claimed an interest in the fee, and threatening to evict her at law, she made a promise, if she died without issue of her body, either to give a specified sum of money or leave him the land. The tenant in possession died having

devised her land to her second husband, who had never any notice of the former agreement. A bill was brought by the heir at law to have this agreement enforced, and it was decreed against the husband. The case of Lord Walpole v. Lord Oxford, 3 Ves. 402, was the case of an agreement to make mutual wills, and although its execution was not decreed because of its uncertainty and vagueness, there was no question as to the power of courts of equity to enforce such agreements, nor of their inclination to do so, where they were sufficiently specific and on proper considerations.

In Dufour et al. v. Perran et al., Lord Camden (as quoted by Hargrave in his juridical arguments, vol. 2, p. 310,) says, that though a will is always revocable, and the last must always be the testator's will, yet a man may so bind his assets by agreement that his will shall be a trustee for the performance of his agreement; as if he covenant to leave so much to his wife or daughter, or if he make a will and covenants not to revoke it, are common cases; and there is no difference, he remarks, between promising to make a will in such a form and making his will with a promise not to revoke it. The will is not set aside, but the devisee, heir or executor is made a trustee to perform the contract. See also the case of Casey vs. Felton, referred to in the same book, 297, in which the contract enforced was a contract to devise. (Fry, Spec. Per. 298.)

In Rives v. Executors of Rives, 3 Dessaus. Eq. 194, the agreement was made by the trustees in contemplation of marriage, and among its stipulations was one that the intended husband, in case the wife survived him, would bequeath to her by will a competent and sufficient maintenance during her life. The provision left by the will of the husband not being satisfactory and not being deemed a sufficient maintenance, upon a bill filed, it was held inadequate, and the court, by its decree, enlarged it. The Chancellor, Dessausure, in delivering the opinion, observes, that " the husband, by the agreement, had renounced the absolute power of disposing of his estate at his pleasure, or even at his

caprice, with which the law had clothed him; and I can not doubt that he could bind himself to do so." Alluding to cases of agreement to make mutual wills in a particular way, he remarks, that in these cases courts of equity have held the parties bound, and have made the estate of the party, who did not comply with the agreement, liable to the other party who had complied, on the happening of the event which entitled him to the benefit. He also cites as analogous in principle the case of a father promising, in consideration of the marriage of a child, to leave such child a legacy, which had been held binding on his estate after his death when he had neglected to provide; and adds that, independently of any preceding decision, he should feel no hesitation to decide this point on principle.

In the case before us, the plaintiff, Wright, is induced to waive his claim against Tinsley to a debt of some $900 in consideration of receiving an equal share by his will with the other children of the testator. This proposition was made by Tinsley in order that there might be an equal distribution of his property; it is accepted by Wright with that understanding; and an arbitration is proposed and had with a view to carry out this object. The arbitrators were apprised of the objects of it, and of the existence and contents of the will by which plaintiff's wife and children are provided for equally with the other children of the testator. By the award made in the case, the plaintiff was to give his note for some $400, received prior thereto as an advancement. This note was accordingly executed and delivered, but with the understanding that it was not to be considered as an indebtedness, but was to be held for the purpose of equalizing the distribution of the property under the will, and as showing the proper deduction to be made from plaintiff's share of the estate. After this was done, which was in 1847, it is alleged that Tinsley destroyed the will which was the basis of the agreement, and made another, (his last will,) by which the plaintiff and his children were left unprovided for, except that he bequeathed the note which had been given to Tins-

ley for the $400. This arbitration, though unusual in its terms, was in effect a surrender of the debt due from Tinsley upon the faith of a promise to make the testamentary provision mentioned. On the part of Wright, the agreement has been executed, and the consideration has been received and enjoyed by the other party; and it has gone to augment an estate out of which Wright's children were to be provided for, and which provision was the sole consideration for the release of the indebtedness.

The authorities cited in support of the position—that where it is not in the power of the defendant specifically to perform the contract, and this was known to the plaintiff before the institution of the suit, neither performance nor compensation in damages will be decreed—can have no application to a case like this; and, according to these authorities, the rule is not inflexible ; for it is there conceded that in special cases where there can be no specific performance, a bill may be sustained for damages. This case, however, is not like that of an agreement to convey a particular tract of land, (as in the authorities referred to,) which the party has disabled himself from executing specifically by a subsequent transfer, and the plaintiff has failed on his part as to the payment of the purchase money at the time stipulated. The agreement here is that the plaintiff's children shall have an equal share of the testator's estate. This estate is alleged to be of the value of some $12,000 after the payment of debts, and, with the exception of one piece of town property, worth about $3,000, consists of money and personal property. The conversion of the property into money by a sale for the purpose of distribution among the legatees, interposes no obstacle to the execution of the agreement according to its essential terms. The incapacity of the defendants to perform the contract literally and exactly, in all its parts, is no bar to a performance ; if it can not be performed literally, it may yet be performed as to its substantial requirements ; and it is said that all the cases in which compensation is made by the defendant are illustrations of this doctrine.

Being of opinion that the facts set forth in the petition entitle the plaintiff to relief, the judgment will be reversed and the cause remanded; Judge Scott concurring.