[No. 7333.]

## OLES v. WILSON, EXECUTOR ET AL.

1. CONTRACTS—*To make a Particular Will or Bequest,* if upon consideration and without surprise, imposition or fraud, is a valid contract, and may be specifically enforced in - equity. That the beneficiary in the contract is, by his or her parent submitted to the custody and nurture of the promissor, is a sufficient consideration. No valuation can be placed upon the society, companionship and filial obedience of a child towards its foster parent, or the sacrifice which the parent makes, in the surrender of his child; therefore the courts will not inquire as to the adequacy of the consideration where the promissor has received and enjoyed that, to which, under the contract, he became entitled. (261)

Plaintiff's father entered into a written agreement with Macky, when plaintiff was only seven years of age, by which he committed plaintiff to the care and nurture of Macky and his wife. The agreement provided that the child should become a member of the family of .Macky, subject to his discipline and that of his wife, until her majority, that she should receive a liberal education, and that Macky would by his will devise to the child a portion of his estate, equal in the minimum to one third of the value of the whole thereof. At the time of this agreement the child's mother was dead, and the father and Macky were intimate friends. The child remained in the family of Macky, performing the duties of a child, until after her majority.

The court declined to hold the contract voidable, for inadequacy of consideration, want of certainty, mutuality, or equity.  (264)

2. LIMITATIONS—*Statute of Non-Claim.*  A bill for specific performance of a contract to provide by will for a person named, is not within the provisions of Rev. Stat. § 7206.  The phrase "all demands" in the first clause of the section includes only the demands of widows, orphans and creditors.  Demands of this character must be satisfied in advance of distribution.  The right of the beneficiary in such a contract as supposed is an equity in what remains after all such demands as mentioned in the statute are adjusted and paid, and can be asserted only in a court of original and general equitable jurisdiction.  (255)

3. DISTRICT COURT—*Jurisdiction.*  The district court has jurisdiction of a bill to enforce the specific performance of an agreement to make provision by will for a person named, instituted by the beneficiary, against the executor, and legatees who have received allowances out of the estate to the prejudice of the beneficiary in such contract.  Sections 7141-7146, 7254, of the Revised Statutes have not the effect to confer exclusive jurisdiction of such an action upon the County Court.  (257, 258)

4. SPECIFIC PERFORMANCE—*Contract—Certainty.*  Only reasonable certainty is required, considering the subject matter and purpose of the contract, the situation and relation of the parties, and the attending circumstances.  (265)

Where the party chargeable under contract received the benefits thereof, the court does not regard with favor objections grounded upon the incompleteness or uncertainty of the contract.

Where the chief purpose of a contract is manifest, and can be enforced, relief will not be refused merely because there is an impossibility to carry out some collateral or subsidiary agreement, according to the precise terms.  (266, 267)

5. ——*Parties.*  The bill being brought to enforce a contract to make provision by will for the plaintiff the court said that it would have been proper to have joined as defendant, all the legatees named in the will; but the residuary legatees to whom the great bulk of the estate was devised, being joined, it was said that to bring in the others, would in nowise benefit the executor.  His demurrer upon this ground was therefore overruled.  (272)

6. ——*Judgment.*  Relief is afforded by declaring the legatees named in the will, trustees for the plaintiff, to the extent of her right.  (269)

7. PARTIES—*Bringing in New Parties.*  The provision of the code (§ 16) requiring new parties to be brought in has reference only to indispensable parties.  (273)

8. APPEAL AND ERROR—*Questions Not Presented Below*, will not be considered. (272)

*Error to Boulder District Court.*—Hon. CARLTON M. BLISS, Judge.

Mr. O. A. JOHNSON, Mr. T. A. McHARG, Mr. C. S. THOMAS, Mr. W. H. BRYANT,-Mr. GEORGE L. NYE, Mr. WM. P. MALBURN, Mr. JAMES H. BREWSTER, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General, Mr. CHAS. O'CONNOR, Assistant Attorney General, Mr. HENRY O. ANDREW, Mr. JUNIUS HENDERSON, Mr. HAROLD P. MARTIN, Mr. JOHN A. GORDON, for defendants in error.

May Oles brought suit against Thomas V. Wilson, executor of the estate of Andrew J. Macky, deceased, for the specific performance of a written contract, entered into on August 27, 1880, by and between John M. Bradford and Andrew J. Macky. Thereafter the Board of County Commissioners of Boulder County, and The Regents of the University of the State of Colorado intervened. An amended complaint was thereupon filed, to which the intervenors separately demurred and, the demurrers being sustained, the plaintiff brings the cause here for review.

From the amended complaint it appears that plaintiff's maiden name was Moina May Bradford; that John M. Bradford was her father, and died in New Mexico on July 9, 1892; that Andrew J. Macky died, testate, on June 11, 1907, possessed of an estate amounting to $450,000, and his will was admitted to probate in the County Court of Boulder County on July 29, 1907, and letters testamentary issued to Thomas V. Wilson, the executor named in such will; that at and prior to the execution of the contract in question Bradford and Macky

had been, and were, intimate friends and business associates; that the former had the utmost confidence in the integrity of the latter, and relied implicitly upon his promises, covenants and agreements; that Macky and his wife resided in Boulder, Colorado, and were childless; that the mother of plaintiff was dead, and Macky had solicited and importuned Bradford for the care and custody of the plaintiff, who was then seven years of age, in order that he might have the enjoyment of her society and companionship in his home, and promised Bradford that he would maintain, educate and support the child as his own, and at his death leave to her one-third of his entire estate, if Bradford would surrender to him the care and custody of the child from thence on until she attained the age of eighteen years, which Bradford thereupon consented to do; that in consideration of the premises Bradford and Macky executed the following contract, to-wit:

"This contract is made and entered into this twenty-seventh day of August, A. D. 1880, in the City of Leadville, County of Lake, State of Colorado, by and between Jno. M. Bradford, whose child is herein named as the cause of this action, and Andrew J. Macky who desires and importunes the possession of said child, and in the presence and to the knowledge of those parties whose names are hereunto subscribed.

"Accordingly it is hereby agreed that Moina May Bradford, who was born the twentieth day of May, A. D. 1873, at Lincoln, Nebraska, and whose mother, Alice D. Bradford departed this life in Georgetown, County of Clear Creek, State of Colorado, in the year A. D. 1874, and who is the daughter and only living child of Jno. M. Bradford, shall, on this day, and for reasons agreeable to the said John M. Bradford and Andrew J. Macky, pass from the care and guardianship of the said John M. Bradford in the City of Leadville, State of Colorado, to the home and keeping of Andrew J. Macky in Boulder, County of Boulder, State of Colorado.

"It is also agreed that Moina May Bradford shall, by her father's consent, become a member of the family of Andrew J. Macky, subject to the discipline and control of the said Andrew J. Macky and his estimable wife, Adelaide B. Macky (which discipline and control it has been promised by both parties shall be, at all times, of a kind and parental character) from the day that she shall reach Boulder until she shall have attained her majority, and that she shall continue to remain in the said home and in said family for such indefinite period thereafter as shall be agreeable to herself, and to the members of said family.

"That only for good and sufficient reasons, consisting of alleged and proven neglect or mistreatment, or for acknowledged, or proven mental or financial inability, or for any long and continued dissatisfaction of any or more parties herein named, shall the said Jno. M. Bradford make any action to remove his daughter from the custody of Andrew J. Macky, and to further annul and discontinue the terms of this contract.

"It is further agreed that Andrew J. Macky shall maintain and provide for Moina May Bradford during the life of the said Andrew J. Macky, and during the life of the said Moina May Bradford in a manner and amount appropriate and reasonable in proportion to his income and available means.

"It is also agreed that the said Andrew J. Macky shall cause the said Moina May Bradford to receive a liberal and thorough school and college education, in such schools and other institutions of learning as shall in his judgment seem the most desirable and the best calculated to insure fruitful and satisfactory results, and that he shall also foster and promote such talent or ambition as may awaken or become manifest during her years of growth and development, from childhood to womanhood.

"And it is further agreed that the said Andrew J. Macky shall make actual and careful provision for the future welfare and maintenance of

the said Moina May Bradford, by preparing and having in his possession at all times a legally executed and valid will, in which he shall name all money, property and securities existing under his own right and title, and comprising his individual assets, together with a specific enumeration for the disbursement and distribution of the same, which shall state in plain and direct language the wishes of the said Andrew J. Macky in the event of his death, and in which aforesaid legally executed and valid will he shall bequeath to the said Moina May Bradford a portion amounting in the minimum to or sum equal to not less than one-third (1-3) of the valuation of his entire estate.

"In consideration of the welfare and happiness of his child, and in consequence of his absolute confidence in the word and integrity of Andrew J. Macky, and as an expression of the highest esteem and most sincere regard, this contract is framed and signed by

JNO. M. BRADFORD.

"The terms of this contract are known and understood and accepted by

A. J. MACKY.

"This signature is witnessed by

M. F. WEST,<br>
LEE KAHN.

"Leadville, Colo., August 27th, 1880."

It is further alleged that Bradford performed all the conditions of the contract, and surrendered the plaintiff to Macky, who took her from her father's home in Leadville to his own home in Boulder, wherein she resided continuously as Macky's child until she was twenty-two years of age; that the Mackys sent the plaintiff to the public schools in Boulder and caused her to be enrolled therein under the name of May Macky, and introduced her to their friends and acquaintances as their daughter, and she was so known for the fifteen years she resided in the home of the said Mackys; that plaintiff, for a period of eight years, performed the household work in the home of the said Mackys, and nursed and

cared for Mrs. Macky, who was then feeble and at times unable to care for herself, and in all respects performed the conditions imposed upon her by the terms of the contract aforesaid; that Andrew J. Macky failed to perform the conditions imposed upon him by virtue of the said contract, and wholly disregarded the rights of the plaintiff in the premises, leaving and bequeathing to her no portion of his estate whatever, all of which appears from his last will and testament set forth in the complaint; that said will was made and executed in fraud of the rights and interests of the plaintiff, created by, and arising out of, said contract; that since the last will and testament of Macky was probated and letters testamentary issued to said Wilson, as executor, the latter has made distribution thereunder of the specific legacies named in the will, except to the County of Boulder, which claims $50,000; that he has also, since the commencement of this action, distributed to The Regents of the University of Colorado, the residuary legatees named in said will, the greater portion of the estate amounting in value to more than $300,000; that said legatees are expending large portions of the amount so distributed and received, and will continue to do so unless restrained by order of the court; that defendant Wilson, as executor, still has in his possession about $100,000 belonging to the estate which he will distribute under the terms of the will unless prevented by order of the court. It is further alleged that plaintiff had no knowledge of the contract in question, which had been kept from her designedly and fraudulently by the said Macky, until the 9th day of September, 1909, long after the said will had been admitted to probate, and subsequent to the expiration of one year after the date that letters of administration were granted the executor and that she was, therefore, wholly unable to file or present a claim against the estate, if it was her duty so to do, in the County Court in said county for allowance or rejection within the period of one year after the granting of such letters of administration, and should not by rea-

son of said facts and circumstances be prejudiced in the assertion ·and maintenance of her cause of action.

The prayer of the complaint is for specific performance of the contract; that plaintiff be decreed one-third of the Macky estate; that pending a determination of the matter, the executor be restrained from making further distribution of the estate, and The Regents of the University restrained from making further expenditures of the portion of the estate by them received. While specific grounds of demurrer were embodied in the pleadings filed by the executor and the Board of County Commissioners, that of The Regents of the University was solely upon the ground that the complaint failed to state facts sufficient to constitute a cause of action, and if it be not vulnerable to that objection, it is conceded the judgment must be reversed. The Board of County Commissioners has filed no brief in this court. Indeed, its interest in the estate has been eliminated by the judgment in *Robbins v. County Commissioners,* 50 Colo. 610.

Mr. Justice White delivered the opinion of the court:

1. The trial court held that plaintiff's cause of action was barred by the statute of non-claim. The holding was based upon an erroneous conception of what constitutes a "demand" against the estate of a deceased person within the meaning of the statute. While the import of the word "demand" is very comprehensive when used in certain connections and in reference to certain matters, it is essential, in applying the statute here involved, to first ascertain the sense in which the word is *therein* used. The statute is found in the fourth paragraph of § 7206 R. S. 1908, the same being § 121 of an act entitled: "An act in relation to probate matters, including estates of minors, deceased persons and persons mentally incompetent, and the administration thereof, and to repeal certain acts in relation thereto." Chap. 181, S. L. 1903. The statute requires that "all demands" against the estate of deceased persons shall be divided into four specific classes, and paid in the order

of their classification; that money received by the deceased as executor, administrator, guardian, conservator or trustee shall constitute the first class; that funeral expenses, physician's bill and other expenses of last illness of the deceased, and expenses of the administration and settlement of the estate shall constitute the second class; that allowances to the widow or orphans made as provided by law shall compose the third class; that "all debts and demands of whatsoever kind, without regard to quality or dignity" not within the first, second and third classes, filed in the County Court within one year from the granting of letters, and allowed by the court, constitute the fourth class, and that all demands not filed within such year shall be forever barred "unless such creditor shall find other estate of the deceased not inventoried or accounted for by the executor or administrator, in which case his claim shall be paid *pro rata* out of such subsequently discovered estate," providing "that any claims secured by valid mortgage, * * * may be filed and allowed after the expiration of one year."

The act is arranged in subdivisions and the non-claim statute is found in a subdivision entitled: "Allowance of claims of widows, orphans and creditors." The first section of the subdivision, being section 7205 of the act, relates to insolvent estates, while the next section thereof, being section 7206, includes the non-claim statute, and classifies "demands" against estates. Now, in the classification of the "demands" the claims of widows or orphans constitute the third class, while all other demands, that is, the first, second and fourth classes, must be demands of "creditors," the only other claimants named in the title of the subdivision. It would, therefore, seem that the "demands" referred to in the first line of section 7206, *supra*, are solely the "claims" referred to in the title of the subdivision, namely, the "claims" of widows, orphans and creditors. Other sections of the act strengthen this view. Section 7208 makes it the duty of the executor to fix a date within six months

from the granting of letters for the "settling and adjusting of all claims." He is required to give notice thereof by publication, etc., "requesting all persons having claims and demands against the estate to present the same to the court on the day or days named in such notice for adjustment." Section 7209 authorizes persons having claims against the estate to file the same, and the court to proceed to a hearing thereon, but provides that if no objection be made to such claim "the claimant shall be required to swear that such claim is just and unpaid after allowing all just credits." Section 7216 provides that the court shall class "all demands allowed against any estate at the time of allowance thereof, and such demands shall be paid in their order, commencing with the first class, and when the estate is insufficient to pay the whole of the demands, such demands in any one class shall be paid *pro rata*, *  *  *" Section 7218 provides that *"any creditor* whose debt or claim against the estate is not due may, nevertheless, present the same for allowance and settlement," and section 7234 provides that, "Whenever it shall appear that there are sufficient assets to satisfy all legacies and all demands against the estate, the court shall order the payment of all legacies mentioned in the will of the testator, the specific legacies being first satisfied."

It seems clear from the different sections of the act, taken and construed together, as well as from the nature and reason of the case, that the words, "all demands against the estate," as used in the statute, do not include a claim of the nature of the one forming the basis of this suit. The contract before us contemplates that the "demands" of the statute, of all classes, should be satisfied in full out of the estate before the plaintiff herein should receive anything whatever. This is true, because that which she should receive by its terms was to be vested by the will of Macky. Such means of conveyance necessarily limits the estate, and the final investment of title, to that which is left after "all demands against the estate," as defined in the statute, have been

satisfied. Moreover, if the rights of the plaintiff under the contract fall within "demands" of the fourth class, as prescribed by the statute, and are subject to its disabilities, such rights would likewise be subject to the benefits of the statute, and would, therefore, *pro rate* with other claims of the same class if the estate were insufficient to pay the whole of the demands. Section 7216, *supra.* To include the rights arising by virtue of the contract in question within the purview of the words "demands against the estate" would destroy all distinction between creditors of the estate, on the one hand, and those entitled as distributees thereof, after the payment of its debts, on the other. In construing a statute, courts, if possible, consistent with the reasonable meaning of the words employed in their association with the language of the whole act, ascribe to it a meaning that will avoid absurd results and far reaching evil effects in its application. The difference between a "demand against the estate," within the meaning of the statute, and the rights of the claimant under a contract like the one at bar, is radically and sharply defined. The former is a demand against the estate which must be paid or satisfied in advance of distribution, while the latter is a right or interest in the estate, an equitable ownership therein, after the claims against the estate have been allowed and paid.

When considered in connection with the statutes and the facts there involved, *Furman v. Craine,* 18 Calif. App. 41, 121 Pac. 1007, and *Burns v. Smith,* 21 Mont. 251, 261, 53 Pac. 742, 69 Am. St. 653, support our views here expressed upon this branch of the controversy. Moreover, the cause of action here set forth must be prosecuted, if at all, in a court of original and general equitable jurisdiction and powers. Its purpose is to impress a trust upon the real and personal property of the deceased after his debts are paid and the costs of administration discharged. The necessity for the interposition of equity is quite obvious. As said in *Owens v. McNally,* 113 Calif. 444, 450, 45 Pac. 710, 712, 33 L. R. A.

369: "Plaintiff has rendered service of extraordinary and exceptional character,—such service as, in contemplation of the parties, was not to be compensated for in money, and as, in contemplation of law, cannot be compensated for in money. Therefore by no action at law could a plaintiff be restored to his original position. It would be in the nature of a fraud upon him to deny him any relief, and, the law failing by reason of its universality, equity, to promote justice, makes good its imperfections." Citing, Waterman, Spec. Perf. Cont., section 41; Pomeroy Spec. Perf., section 114. These principles have heretofore been recognized and applied in this jurisdiction as well as in others.—*Marshall v. Marshall,* 11 Colo. App. 505, 53 Pac. 617; *Currier v. Johnson,* 19 Colo. App. 94, 106, 73 Pac. 882; *Carl v. Northcutt,* 48 Colo. 47, 108 Pac. 994; *Peterson v. Est. of Bauer,* 76 Neb. 652, 659, 107 N. W. 993, 111 N. W. 361.

But defendants in error contend that notwithstanding the nature of the action, the County Court in probate had sole jurisdiction in the premises. The contention is based upon the provisions of sections 7254 and 7141 to 7146, R. S. 1908. The former section provides that questions of law and fact relating to probate matters or arising in proceedings under that act, shall be determined by the County Court, and grants the right of appeal from final judgments therein entered to certain designated courts, while the latter sections empower the County Court, upon petition of any party in interest, to require the specific performance of written contracts entered into by a testator or intestate to convey real estate. It can not properly be said that a suit to enforce specific performance of a contract to leave property by will, relates to probate matters or proceedings therein. Nor does the fact that the latter sections empower the County Court to enforce contracts for the conveyance of land entered into by the deceased, deprive the District Court of its jurisdiction in equity matters conferred by the Constitution. The District Courts are invested by the Constitution, sec. 11, art. VI, with original juris-

diction of all causes both of law and in equity. There-fore, if the sections of the statute relied on had at-tempted, which they have not, to create of the County Court an exclusive original forum for the determination of such matters, a serious question would arise as to their constitutionality.

Of the jurisdiction of such constitutional courts of equity and the power of the legislature to interfere therewith, Mr. Beach, at section 1033 in his work on Modern Equity Jurisprudence, says:

"The jurisdiction of chancery over decedents' estates is well established, but in the several states of the Union special courts having jurisdiction over such estates have been generally established called probate courts, orphans courts, surrogate courts, and the like; and these possessed by statute nearly all the powers formerly possessed by the courts of chancery and ecclesiastical courts in England. Courts of equity have, however, concurrent juris-diction; and although their equitable jurisdiction may have been displaced in ordinary cases by the probate system, yet it is not abrogated by statutes conferring jurisdiction on probate courts. And it has been held that an act providing that probate judges shall have exclusive original jurisdiction in matters concerning decedents' estates is void as in contravention of an organic act conferring upon other courts chancery as well as common-law juris-diction."

Whether this view of the matter is right or wrong, it is not necessary now to determine as we have no doubt that the statute in no wise takes away the jurisdiction of the District Court in the premises. In discussing the question of jurisdiction Mr. Pomeroy, in sec. 1153, vol. III of his work on Equity Jurisprudence, says:

"One fundamental principle should be con-stantly kept in mind; it underlies all particular rules, and furnishes the solution for most of the special questions which can arise. In all those states which have adopted the entire system of equity jurispru-dence, whatever be the legislation concerning the

powers and functions of the probate courts, and whatever be the nature and extent of the subjects committed to their cognizance, the original equitable jurisdiction over administrations does and must still exist, except so far and with respect to such particulars as it has been abrogated by express prohibitory *negative* language of the statutes, or by necessary implication from *affirmative* language conferring exclusive powers upon probate tribunals. This equitable jurisdiction may be dormant, but except so far as thus destroyed by statute, it must continue to exist, concurrent with that held by the courts of probate, ready to be exercised whenever occasion may require or render it expedient. This general principle, so familiar, so fundamental, running through all branches of the equitable jurisdiction, but so often lost sight of by American courts in dealing with the jurisdiction as applied to administrations, was admirably stated by one of the ablest of American judges: 'There is nothing in the nature of jurisdiction, as applied to courts, which renders it exclusive. It is a matter of common experience that two or more courts may have concurrent powers over the same parties and the same subject-matter. Jurisdiction is not a right or privilege belonging to the judge, but an authority or power to do justice in a given case, when it is brought before him. There is, I think, no instance in the whole history of the law where the mere grant of jurisdiction to a particular court, without any words of exclusion, has been held to oust any other court of the powers which it before possessed. Creating a new forum with concurrent jurisdiction may have the effect of withdrawing from the courts which before existed a portion of the causes which would otherwise have been brought before them; but it cannot affect the power of the old courts to administer justice when it is demanded at their hands.' "

2. The contract in question does not purport to create a relation between the promisor and the plaintiff whereby the latter would receive property under the law of inheritance from the former, but seeks to create a direct contractual relation wholly independent of such

laws and the adoption statutes. Therefore, certain questions, difficult of solution, found in many cases are not here involved. Plaintiff's right to relief, if any, rests upon the obligation assumed by Macky in the contract with her father, and must be measured and determined by well known principles of law and rules of construction. It is elementary that a valid agreement may be made on a good consideration to give property by will.—*Krell v. Codman*, 154 Mass. 454, 28 N. E. 578, 14 L. R. A. 860, 26 Am. St. Rep. 260; *Johnson v. Hubbell*, 10 N. J. Eq. 332, 66 Am. Dec. 773; *Van Duyne v. Vreeland*, 12 N. J. Eq. 142; *Wright v. Tinsley*, 30 Mo. 389; *Gupton v. Gupton*, 47 Mo. 37.

In *Rivers v. Rivers*, 3 Desau, 190, 4 Am. Dec. 609, in sustaining the propriety of a court of equity recognizing such agreement, it is said, that:

"A man may renounce every power, benefit or right which the laws give him, but he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition or fraud, and it be reasonable and moral."

While in *Johnson v. Hubbell, supra,* the rule is stated as follows:

"There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by a conveyance to be made at some specified future period, or upon the happening of some future event. It may be unwise for a man, in this way, to embarrass himself as to the final disposition of his property, but he is the disposer, by law of his own fortune, and the sole and best judge as to the time and manner of disposing of it. A court of equity will decree the specific performance of such an agreement upon the recognized

principles by which it is governed in the exercise of this branch of its jurisdiction.''

It is equally elementary that a contract to leave by will property to a child in consideration of his living with the promisor, will, when the contract meets all of the requirements, be specifically enforced after the promisor's death, it having been fulfilled on the part of the promisee.—*Burns v. Smith, supra; Sutton v. Hayden,* 62 Mo. 101; *Sharkey v. McDermott,* 91 Mo. 655, 4 S. W. 107, 60 Am. Rep. 270; *Moline v. Carlson,* 92 Neb. 419, 138 N. W. 721.

Indeed, in a note to *Baumann v. Kusian,* 44 L. R. A. (N. S.), 756, 763, it is said that, no cases are opposed to such holding as a general principle, provided that the property is to be conveyed by any means except by operation of the inheritance laws; and that most courts interpret nearly all such contracts so as to give effect to the real intention of the parties, some courts construing contracts for mere adoption in that liberal way.

Counsel on either side concede this to be the law. It is claimed, however, by defendants in error, that this contract fails to meet many of these requirements; that it lacks adequacy of consideration and mutuality; that it is unjust and unfair in its terms, and is so uncertain and indefinite that a court of equity should decline to enforce it. In considering some of these objections it is well to bear in mind that the contract obligates the promisor to leave property to a child, in consideration of her living with him as his child, rather than as compensation for services to be rendered by her, and that it has been fully performed by the latter. As no definite money value can be fixed for the society, companionship and filial obedience of a child, or to a parent's sacrifice in giving up his child to another, which is the real consideration in such contracts, courts will not inquire into the adequacy of the consideration when the promisor has fully received and enjoyed the benefits of the contract. As said in *Haubrich v. Haubrich,* 118 Minn. 394, 397, 136 N. W. 1025, 1026:

"The law applicable to these questions is too well settled to justify any extended discussion. A party to a contract may obligate himself to make his will in a particular way, or to give specific property at his death to a particular person, so as to bind his estate; * * * Specific performance of the contract will not be enforced, where the consideration is labor and services which may be estimated and their value liquidated in money; but where the consideration is that the promisee shall assume a peculiar and distinct relation to the promisor, and the services are of such a character that it is practically impossible to estimate their value by any money standard, specific performance will be decreed."

The identical question was considered and ruled in *Healey v. Simpson,* 113 Mo. 340, 346, 20 S. W. 881, 883. There a written contract for the adoption of a chilld was held invalid because not executed in conformity with the laws of the state, yet as the contract also provided that the child should have and inherit from the estate of the promisors in the same manner and to the same extent that a child born of their union would inherit, such part of the contract would be specifically enforced in favor of the heirs of the promisee against the heirs of the promisors, and upon the question of consideration, said:

"The surrender by the mother of all control of the child, and the services and companionship of the latter constituted valuable considerations for the promise of Brewster and his wife, that she should 'have and inherit from the estate of said parties * * * in the same manner and to the same extent that a child born of their union would inherit.' The influences of a child of tender years in the home circle are too sacred and holy to be estimated in dollars and cents. And, when the mother sent her child to dwell in another family in a distant state, she yielded much of affection and love, and Brewster by the same act gained the companionship of one who added much no doubt to his enjoyment of life. The sundering of natural ties and the formation of artifical ones for the enjoyment and gratification of

the party at whose instance this is done, is held, and ought to be held to be such a consideration as the courts will recognize as valuable where the other party has in good faith acted on and carried out the agreement on his part. This is upon the principle that the parties can not be put *in statu quo*. In the very nature of things nine years in the life of a child so changes conditions that it is out of the power of an earthly tribunal to restore the parties to their original situation and environment, and the courts therefore compel them to stand upon and abide by the record they have made.''

In *Chehak v. Battles,* 133 Iowa, 107, 110 N. W. 330, 8 L. R. A. (N. S.) 1130, 12 Ann. Cas. 140, applying the same rule, it is said:

"The surrender of a child by its parent to another, who at the time agrees to adopt the child as his own, or to devise property to or to make him his heir, is generally held as a valid consideration; and, as it is made for the benefit of the child, he may maintain an action for specific performance.''

The rule is stated in *Jaffee v. Jacobson,* 48 Fed. 21, 1 C. C. A. 11, 24, 14 L. R. A. 352, 356, as follows:

" * * * a court of equity will specifically enforce a promise to leave to another the whole or a definite portion of one's estate as a reward for peculiar personal services rendered, or other acts done by the promisee, which are not susceptible of a money valuation, and were not intended to be paid for in money, provided the consideration has been substantially received at the promisor's death; and it is no objection to the enforcement of such a contract that it was entered into with a third party for the promisee's benefit if the latter has acted under it and executed it. Such seems to be the substance of the rule fairly deducible from the authorities cited, and relied upon by appellant's counsel.'' Citing *Rhodes v. Rhodes,* 3 Sandf. Ch. 279, 7 L. Ed. 852; *Van Dyne v. Vreeland,* 11 N. J. Eq. 371; *Sutton v. Hayden,* 62 Mo. 102; *Sharkey v. McDermott,* 91 Mo. 648, 8 West. Rep. 4 S. W. 107, 60 Am. St. 270, 737; *Haines v. Haines,* 6 Md. 435; Pom. Cont. section 114.

Under the facts here pleaded we are certain the contract in question can not ·be avoided on the ground of inadequacy of consideration. Neither is it vulnerable to the objection of the want of mutuality. Its every condition and obligation on the part of plaintiff, as disclosed by this record, had been fully performed long prior to the death of Macky. The rule in this regard is tersely stated in *Oswald v. Nehls,* 233 Ill. 438, 445, 446, 84 N. E. 619, as follows:

"It is next insisted by appellants that the contract in question is wanting in mutuality and for that reason a specific performance should be denied. This contention cannot be sustained. The general rule is, that before. specific performance of a contract will be decreed it must appear that there was mutuality, both in the obligation and remedy, under the contract, as long as the contract remains executory on both sides. (Waterman on Spec. Perf., sec. 196; Page on Contracts, sec. 1621; *Lancaster v. `Roberts,* 144 Ill. 213, [33 N. E. 27]; *Welty v. Jacobs,* 171 Ill. 624, [49 N. E. 723, 40 ·L. R. A. 98]; *Bauer v. Lumaghi Coal Co.,* 209 Ill. 316, [70 N. E. 734]. But this rule has no application to contracts in which the provisions which could not be enforced specifically have been fully performed. Contracts for personal care and attention or personal services can not usually be enforced specifically. However, when personal care and attention or personal services have been fully performed, and the circumstances are such that to deny specific performance would leave the party with an injury that could not be adequately compensated in damages, equity will grant a specific performance of the remaining provisions of the contract."

Contrary to the contention of defendants in error, we see nothing in the record to justify the conclusion that the contract is unjust and unfair. It does not appear to be oppressive, one-sided, unconscionable or in any wise affected by inequitable features, nor can we discover that its enforcement would result in wrong or injustice. Men must be just, and honestly discharge their

legal obligations, before they can be lawfully permitted to be generous. In equity their actions are tested in the crucible of good faith and conscience, and decrees are molded so as to measure out justice to all concerned. As said in *Johnson v. Hubbell, supra,* p. 338: "If A. enters into an agreement, for which he receives a good consideration, with B., to give him his property by will, and in violation of his agreement he gives it, by his will, to C., the court will declare C. a trustee for B. In doing this, it does C. no wrong. A. having undertaken to make to C. a voluntary gift of that which he had no right in law so to dispose of, the court does C. no injustice, and violates none of his rights, by declaring him a mere trustee. To permit C. to hold the property as against B., the court would sanction the fraud which A. had committed in disposing of the property in violation of his agreement."

When we consider the contract before us, together with the circumstances of the contracting parties, we are satisfied that the material terms thereof are expressed with sufficient clearness and definiteness to enable us to ascertain the intent of the parties, and that a decree may be framed in accordance with such intent. Of this there can be no reasonable doubt, when we keep in mind the rules established by courts of equity in dealing with such matters, together with the fact that plaintiff has fully performed the contract on her part and the impossibility of measuring the value of her acts in that behalf by any money standard. As said in *Work v. Welsh,* 160 Ill. 468, 473, 43 N. E. 719, 722:

"It is only necessary that the terms of a contract 'be expressed with reasonable certainty, and what is reasonable in any case must depend upon the subject matter of the contract, the purpose for which it was entered into, the situation and relations of the parties, and the circumstances under which it was made.' (Pomeroy on Contracts, section 159.) Equity will only require a reasonable certainty in a contract sought to be enforced, and if the meaning, taken as a whole, is intelligible to the court, specific performance will be decreed."

Moreover, "When a contract has been. partly performed by the plaintiff, and the defendant has received and enjoys the benefits thereof, and the plaintiff would be virtually remediless unless the contract were enforced, the court, from the plainest considerations of equity and common justice, does not regard with favor any objections raised by the defendant merely on the ground of the incompleteness or uncertainty of the agreement."—Pomeroy on Contracts, section 5, p. 208.

Indeed, in speaking of this character of cases, Lord Camden, in *Durour v. Perraro*, Hargreave's Judicial Arguments, 304, declared that a person, by promising to give property by will, thereby bound his assets and became a trustee for the performance of the agreement, transmitting that trust to those who claim under him, and that: "There is not an instance to be found since the jurisdiction was established where one man has ever been released from his engagement after the other has performed his part." The direct purpose of the agreement in issue, plainly expressed, was to afford Macky the society, companionship and filial obedience of a child in his household, and to secure to that child a good home and a definite portion of Macky's estate upon distribution thereof. His direct obligation to the child, in that regard, is clearly set forth therein, twice restated, and made more specific. In one clause is the obligation to maintain and provide for her during her life, the manner and extent thereof to be appropriate and reasonable in proportion to his income and available means. How this duty was to be performed is not specified in this clause. The contract, however, subsequently restates the obligation, and binds Macky to make actual and careful provision for plaintiff's future welfare and maintenance by preparing and having in his possession, at all times, a legally executed and valid will in which he was required to name "all money, property and securities existing under his own right and title and comprising his individual assets, together with a specific enumeration for the disbursement and distribution of the same";

and in which he shall bequeath to the plaintiff "a portion amounting in the minimum to or sum equal to not less than one-third (1-3) of the valuation of his entire estate." In *Roehl v. Haumesser*, 114 Ind. 311, 15 N. E. 345, it was held that a contract to devise "one-half of my estate" applies to such property of all kinds as the person so contracting may have subject to disposition by will at his death, and is not void for uncertainty of description. So, in the case at bar, a court can readily determine with certainty, by the aid of extrinsic admissible evidence, every article of Macky's estate and its value, and, having done so, it has identified the estate. Should we assume, as defendants in error contend, that the obligation contemplated the selection by Macky of specific articles or securities for the plaintiff, we do not think it would render the contract non-enforceable in equity. In any event, the articles selected would necessarily be from his assets subject to the prior payment of his debts. Therefore, the agreement, in legal effect, creates a trust in his estate in favor of plaintiff for the one-third part thereof. For had he actually named in his will "all money, property and securities existing under his own right and title" and bequeathed to plaintiff particular articles thereof, it would not be a fulfillment of his obligation, unless such articles in value equaled, substantially, one-third of his entire estate, and, under such circumstances, a court of equity would subject other portions of the estate to discharge the trust.— *Rivers v. Rivers, supra, Offutt v. Offutt,* 106 Md. 236, 67 Atl. 138, 12 L. R. A. (N. S.) 232, 124 Am. St. 491.

Furthermore, the requirement or right reserved in that respect, if there be such, is only incidental to the main obligation to bequeath to her the one-third part of his estate, and in carrying out the trust, will be performed by the court or disregarded. The principle applied, is, that when the chief purpose of a contract is manifest and can be enforced, form shall not be allowed to destroy substance, merely because there exists an im-

possibility to carry out some collateral or subsidiary agreement according to its precise terms; especially when the contract has been performed by the party seeking its enforcement and he is in no sense responsible for the failure concerning the collateral or subsidiary agreement. In *Joy v. St. Louis*, 138 U. S. 1, 43, 34 L. Ed. 843, 11 Sup. Ct. 243, 255, there was under consideration a provision in a contract between a railroad company and city park commissioners for the use of a right of way by other railroad companies. The suit was for specific performance, and it was objected that the contract was too uncertain to warrant the relief, and, because of failure to agree upon the compensation, it was contended that the contract could not be enforced specifically, and an attempt to do so would be the making of a new contract by the court and the enforcement of it. Upon this point it is said: the contract

"provides that the County company 'shall permit' other railroads to use its right of way. This is to be done 'under such reasonable regulations and terms as may be agreed upon,' and 'upon such terms and for such fair and equitable compensation to. be paid' to the County company 'therefor as may be agreed upon by such companies.' Not only are the regulations and terms to be reasonable, but the compensation is to be fair and equitable. Although the statement is that the compensation is to be such 'as may be agreed upon by such companies,' yet the statement that it is to be 'fair and equitable' plainly brings in the element of its determination by a court of equity. If the parties agree upon it, very well; but if they do not, still the right of way is to be enjoyed upon making compensation, and the only way to ascertain what is a 'fair and equitable' compensation therefor is to determine it by a court of equity. Such is, in substance, the agreement of the parties. The provision cannot be construed as meaning that, if the parties do not agree, there is to be no compensation, and that, because there can in that event be no compensation, there is to be no enjoyment of the right of way. In this view, it cannot be said that

the court is making an agreement for the parties which they did not make themselves.''

So, here, if a proper construction of the contract be that Macky therein reserved the right to designate the particular articles of his estate that plaintiff should receive by his will, it was, nevertheless, coupled with the obligation that in no event should it be in value less than one-third of the entire estate, which clearly brings in the element of its determination by a court of equity. If he made the selection and it equaled the value designated, his obligation in that regard was performed. But as he made no selection, the main obligation to leave her a portion of his estate amounting in the minimum to or sum equal to not less than one-third of the valuation of his entire estate will be enforced, if impervious to other objections, as a court of equity can readily segregate the entire estate into three parts of equal value and no injury could possibly result therefrom. The provision can not be held to mean that if he failed to make the selection that thereby plaintiff was to have no compensation, and the estate be discharged of the trust created for her benefit.

In *Dinham v. Bradford,* L. R. 5 Ch. App. 519, 522, 523, a partnership agreement provided that at the end of the partnership, one partner should purchase the share of the other at a valuation to be made by two persons, one named by each. It was held that as the valuation could not be so made, as no umpires had been selected, the court would, nevertheless, carry the agreement into effect by ascertaining the value of the share, Lord Hatherly saying:

"There was one clear and manifest object of this agreement. * * * Here is a man who has had the whole benefit of the partnership in respect of which this agreement was made, and now he refuses to have the rest of the agreement performed on account of the difficulty which has arisen. It is much more like the case of an estate sold, and the timber, on a part, to be taken at a valuation, the adjusting of matters of that sort forming part of the

arrangement, but being by no means the substance of the agreement; and in such cases the court has found no difficulty. If the valuation can not be made *modo et forma,* the court will substitute itself for the arbitrators. It is not the very essence and substance of the contract, so that no contract can be made out except through the medium of the arbitrators. Here the property has been had and enjoyed, and the only question now is, what is right and proper to be done with regard to settling the price?''

But, it is said there is serious uncertainty in respect to the portion of Macky's .estate which the plaintiff was to have and receive, arising by reason of the qualifying words ''in the minimum'' and ''not less than'' as therein used, an intent being evidenced to leave to Macky's future determination the fixing of the maximum portion of his estate to be left to plaintiff. If such intent be evident, it is, nevertheless, certain that the minimum amount or value is fixed, and, therefore, the obligation is certain. What he might be at liberty to do in no sense makes uncertain that which he specifically obligated himself to do. In other words, he bound himself to leave to plaintiff the one-third portion of his estate; no more, no less. The word ''portion'' is clearly used in reference to the estate which he might have at the time of his death, and the language fixing the value thereof designates with sufficient certainty the particular share therein that plaintiff should have and receive. If it be true that such share might possibly be a sum of money, it is of no particular consequence. In any event, it was to -be a portion of the estate, and must be taken therefrom, and the promisor being dead, the court will impress the trust upon the estate. Indeed, it has been held that in a case of. very clear equity in plaintiff and the remedy at law, precarious, a bill for *damages* might be sustained.—*Phillips v. Thompson,* 1 John's Ch. 131; *Gupton v. Gupton,* 47 Mo. 37, 47; *Wright v. Tinsley,* 30 Mo. 389, 399.

The case is unlike that of an agreement to leave by will a particular tract of land which the promisor subsequently conveyed by deed to another possessing no knowledge of the previous agreement. In such case the land would be beyond the reach of the promisee and no trust could be impressed thereon. Here the agreement relates to the estate which at his death becomes a readily ascertainable entity, and the trust may be easily impressed thereon. In *Wright v. Tinsley, supra,* in directing a decree for specific performance, it is said:

> "The agreement here is that the plaintiff's children shall have an equal share of the testator's estate. This estate is alleged to be of the value of some $12,000 after the payment of debts, and, with the exception of one piece of town property, worth about $3,000, consists of money and personal property. The conversion of the property into money by a sale for the purpose of distribution among the legatees, interposes no obstacle to the execution of the agreement according to its essential terms. The incapacity of the defendants to perform the contract literally and exactly, in all its parts, is no bar to a performance; if it can not be performed literally, it may yet be performed as to its substantial requirements."

We see no substantial difficulties in the enforcement of this contract, but were it otherwise we would adopt the suggestion in *Wilson v. The Furness Ry. Co.,* 9 L. R. Eq. Cases 28, 33, and earnestly endeavor to overcome them to the end that a grievous wrong be righted. In that case a demurrer was interposed to a bill which prayed specific performance by the railroad company to construct a railroad and a wharf. It was claimed that the contract was too vague in its terms for enforcement, and the Chancellor said:

> "The demurrer must be overruled. * * * It would be monstrous if the company, having got the whole benefit of the agreement, could turn round and say; 'This is the sort of thing which the Court finds a difficulty in doing, and will not do.' Rather than allow such a gross piece of dishonesty to go un-

redressed, the Court would struggle with any amount of difficulties in order to perform the agreement.''

So, in the case at bar, every consideration of equity, justice and good conscience requires us to direct that the demurrer be overruled and the defendants ruled to further plead in the premises. While a party may not demand the specific performance of a contract as a matter of right, for the exercise of this power rests in the sound discretion of the court in view of all the surrounding circumstances, nevertheless, as said in a note to *Bennett v. Burkhalter,* 44 L. R. A. (N. S.) 733, 734, it is not solely a stumbling block to the complainant, ''but in practice it may help him if his cause is just. It is a two-edged sword almost sure to bring destruction to the party whose cause is out of harmony with the judicial conscience.''

3. It is further contended that the complaint is insufficient in that it contains no description of the property belonging to Macky's estate. As the purpose of the suit is to enforce the contract by impressing a trust upon his estate as contradistinguished from having particular property conveyed to plaintiff, it is not certain that a detailed statement of such property is required to be set forth in the complaint. And, as the objection was not urged in the court below and only presented here in a supplemental brief, we decline to notice it further. If it had been urged in that tribunal by a motion to make more specific, which would have been the proper pleading, the complaint could have been readily amended in that regard, and we decline to deprive plaintiff of her substantial rights upon such technicality so presented.

4. The alleged defect of parties, which is raised by the demurrer of the executor, was not passed upon by the trial court, and we shall consider it very briefly here. If the beneficiaries under the will were of the same class, the matter would present a serious question, but the bulk of the estate goes to residuary legatees, all of whom are parties to this suit. Under these circumstances, the

bringing in of the other legatees could in no wise be of benefit to, or concern the demurring defendant. The rule applicable here is stated in *Pollard v. Lathrop*, 12 Colo. 171, 175, 20 Pac. 251, 253, as follows:

> "The provision requiring other parties to be brought in, where a complete determination of the controversy cannot be had without their presence, has been held to apply to cases 'where there are other persons not parties whose rights must be ascertained and settled before the rights of the parties to the suit can be determined.' *McMahon v. Allen*, 12 How. Pr. 39, 45. This has reference to the necessary parties to the action; that is, to such parties as are indispensable."

While, no doubt, it would have been proper and, perhaps, wise to have joined, as defendants, all the legatees under the will, still the rights of the residuary legatees can be ascertained and settled in this suit without the presence of the others, and the case may proceed. Nevertheless, the objection, like that considered under subdivision 3, may be entirely eliminated by amendment of the complaint, if the plaintiff so desires. The judgment is, therefore, reversed and the cause remanded.

*Judgment reversed and remanded.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.

Decided April 6, A. D. 1914: Rehearing denied June 1, A. D. 1914.