**ALLEN et al. v. MULKEY et al.   (No. 10557.)**

Court of Civil Appeals of Texas.   Dallas.
June 15, 1929.

Opinion Modified July 6, 1929.   Rehearing Denied July 13, 1929.

Cockrell, McBride, O'Donnell & Hamilton, of Dallas, for appellants.

Crane & Crane, of Dallas, for appellees.

VAUGHAN, J. Appellants were plaintiffs and appellees defendants in the court below. This is an appeal from a judgment sustaining a general demurrer addressed by appellees to the following amended original petition filed by appellants:

"Now come the plaintiffs, Lydia Allen, joined pro forma by her husband, C. L. Allen, Mrs. Odessa Wilson, a widow, Mrs. Cyrene Duff, joined pro forma by her husband, F. H. Duff, Mrs. Adell Fowler, joined pro forma by her husband, L. P. Fowler, and Fletcher Allen, all plaintiffs residing in Dallas county, Texas, and complain of the defendants, as follows, whose residences, so far as plaintiffs know, are set forth opposite the respective names: Ike Mulkey, Pickett Mulkey, Lattie Mulkey, Mrs. Addie Ward, a widow, Fletcher Ward, L. A. Patterson, a feme sole, Mrs. Jett Parks, a widow, Mrs. M. E. Caffee, a widow, Mrs. Hettie Field Herrington and husband, Bert Herrington, Mrs. Lela Wells and husband, E. L. Wells, Mrs. Marian Getzwiller and husband, P. C. Getzwiller, Mrs. Emma Arnold and husband, Claude Arnold, Frank Calfee, Mrs. Fleta Beaty and husband, Wilber Beaty, Frank Mitchell Gray, Mrs. Alice Gillespie, and husband, Jack Gillespie, Mrs. Birdie Lett, a widow, Mrs. Grace Gilbert and husband, R. R. Gilbert, Fletcher Mulkey, E. P. Hawkins, F. L. Hawkins [residences as alleged omitted], the three last mentioned being sued herein in their individual capacities, as well as in the capacity of trustees (only) of the estate of Mrs. A. T. Mulkey, deceased, under appointment of the last will and testament of Mrs. A. T. Mulkey, of date March 30, 1925, as probated in Dallas county, Texas, and plaintiffs for cause of action represent as follows:

"(1) That J. F. Mulkey and A. T. Mulkey were husband and wife at and long prior to the date of the birth of the said Lydia Allen, and were such up to the date of their respective deaths, the said J. F. Mulkey having died intestate at Dallas, Texas, on the ——— day of January, 1925, and the said A. T. Mulkey having died at Dallas, Texas, on the ——— day of June, 1927. That the said J. F. Mulkey and A. T. Mulkey were ever childless.

"That the plaintiff Lydia Allen was the natural child of Thomas Smith and ——— Smith; that in or about the year 1872, when the said Lydia was of about the age of seven years, her mother having died and her father being ill-prepared to look after her, the said J. F. Mulkey, having become enamoured of her, did desire to adopt her; that after entering into negotiations with the said Lydia's father, Thomas Smith, the said J. F. Mulkey obtained the consent of the said Lydia's father that he might legally adopt the said Lydia as his child, under the name of Lydia Mulkey, she to become a part of the Mulkey family, live with them as a member of the family as if she were the only child of the said Mulkeys, with the understanding and agreement of the said J. F. Mulkey that upon the death of the survivor of the said J. F. or A. T. Mulkey the said Lydia should be and become entitled to the said J. F. Mulkey's one-half of the property, as if she were his natural child; that the said J. F. Mulkey, beginning shortly after the said Lydia Allen began to live in his family, made like assurances to the said Lydia, and gave her to understand that she was his adopted child and would become entitled to his property, and the said Lydia throughout all the duration of her remaining as a child in the family of the said J. F. Mulkey and wife, rested and abided under and in the light of such assurances and agreement and bestowed her love and affection and rendered services as his child, to the said J. F. Mulkey, implicitly relying upon the assurances of the said J. F. Mulkey that such was his understanding and agreement with her.

"(2) In or about the year 1872, when the plaintiff was a child of tender years, not more than seven years of age, J. F. Mulkey entered into a written contract with Thomas Smith, the natural father of the plaintiff, Lydia Allen, by the terms of which contract the said J. F. Mulkey specifically, in writing, contracted and agreed with the said Thomas Smith that, if he, the said Thomas Smith, would surrender the child Lydia, plaintiff herein, to the said J. F. Mulkey, he the said Mulkey would execute a statutory adoption of the plaintiff, that he the said Mulkey, and his wife, would rear said child as their own, and that he would give said child, the plaintiff herein, his one-half of all the property belonging to himself and his wife, upon the death of the survivor of the said J. F. Mulkey and wife. Said contract provided for the absolute and complete termination of the relation of father and child between said Thomas Smith and said child, and the delivery to the said Mulkey and wife of the exclusive and full custody and control of her. Immediately upon the execution of said contract, and in compliance with the understanding and agreement therein expressed, substantially to the effect that her father should surrender her custody completely and unconditionally to the said Mulkey and his wife, to be reared in their home as their own child, and to be adopted by them on the conditions above stated, to the effect that said child, the plaintiff, should receive the said J. F. Mulkey's part of the property at the death of the survivor of himself and his said wife, delivery of said child and the custody of her were given over to the said J. F. Mulkey and his wife, and thereby said written contract on the part of the said Thomas Smith became fully executed.

"Thereafter, while the child Lydia, plaintiff herein, was living in the family of the said J. F. Mulkey and wife, as their daughter, and bestowing upon them all the affections of a daughter, and performing all the services

and duties properly to be performed by a daughter, the said J. F. Mulkey specifically and definitely agreed with said plaintiff that, in consideration of her being and remaining in his home in the relation to him of child to parent, as she did until her marriage, she should receive, upon his death, or upon the death of his wife, should the latter survive him, all his one-half of the property belonging to the community estate of himself and wife, and that said contract and understanding and agreement between said plaintiff and the said Mulkey were repeatedly reaffirmed by the said J. F. Mulkey through express agreements, declarations and course of conduct.

"(3) These plaintiffs are unable to state with more particularity than as in this petition set forth, the terms of the contracts and agreements upon which they rely, the date thereof, or the circumstances under which made, save that said contracts and agreements to adopt this plaintiff, Lydia Allen, and to give her the said J. F. Mulkey's one-half of his property, all as set forth herein, were made and entered into originally about the year 1872, when this plaintiff was of the age of about seven years, and said agreements and contracts were, as these plaintiffs believe and allege the fact to be, partly oral and partly in writing. That said agreement to adopt this plaintiff and for her to have said property, in so far as same was partly in writing, was in the form of a written agreement executed by the said J. F. Mulkey along or about said time, the exact date being unknown to this plaintiff. Said written agreement was in possession of the said J. F. Mulkey and as this plaintiff is informed and believes, thereafter in the possession of his wife, A. T. Mulkey, and same should now be in the possession of the defendants sued herein, and defendants are given notice to produce same upon the trial of this cause, or secondary evidence of same and the contents thereof will be offered. That said agreement of the said J. F. Mulkey to adopt this plaintiff, and for plaintiff to have his one-half of said property, all as set forth herein, was made and entered into by the said J. F. Mulkey, not only on or about the year 1872, or thereabouts, but many times thereafter repeated and reaffirmed by the said J. F. Mulkey by express agreement, declaration and course of conduct, all as set forth more particularly elsewhere in this petition. That the plaintiffs are unable to state with more particularity the terms, dates or conditions of such agreements or contracts, whether oral or in writing, but plaintiffs upon information and belief allege the facts to be that the defendants, or some of the defendants, have long known of such contracts and agreements, and have more specific and particular information concerning same, and the contents thereof, than have these plaintiffs. That besides the contracts and agreements, oral or written, in this paragraph (III) mentioned, the said J. F. and A. T. Mulkey did execute a further written instrument dated August 8th, 1923, as set forth in Paragraph VII hereof; that said instrument was in the possession of the said J. F. Mulkey and A. T. Mulkey, and is or should be in the possession of the defendants at this time, and defendants are given notice to produce same upon the trial hereof, or secondary evidence of the contents thereof will be offered.

"That in obedience to the said understanding and agreements, the said Lydia's own father did surrender to the said J. F. Mulkey the custody and control of the said Lydia, himself completely relinquishing such control and custody, and continuously thereafter until her marriage to the plaintiff, C. L. Allen, the said Lydia so continued as a member of the family of the said Mulkey and wife, going under the name of Lydia Mulkey, rendering to the said J. F. Mulkey and wife, the same services, and bestowing upon them the same love and affection, as if she were their own child, she all the while having been given by the said J. F. Mulkey to understand that she was his legally adopted child. That the said Lydia married the plaintiff, C. L. Allen, on the 16th day of October, 1887, with the full consent of the said J. F. Mulkey, and ever thereafter the said J. F. Mulkey and wife treated the said C. L. Allen as their son-in-law, and universally introduced him as such. That continuously up to the date of the death of the said J. F. Mulkey, both the plaintiff Lydia and her husband fully understood that the said Lydia was the legally adopted child of the said J. F. Mulkey, and neither of them was disillusioned until immediately following the death of the said J. F. Mulkey, when they were advised by his surviving wife, A. T. Mulkey, that no legal adoption had been made of the plaintiff Lydia.

"(5) That the said J. F. and A. T. Mulkey acquired and possessed at their respective deaths, an estate consisting of community property of the approximate value of $112,-000.00, a small portion of which consists of real estate, and the major portion of personal property. Plaintiffs are unable to aver with particularity just what said property consisted of, but alleges that so far as they have been able to learn and ascertain, the following properties, of substantially the respective values set opposite, constituted the community estate of the said J. F. and A. T. Mulkey at their respective deaths, or, if not, at the date of the death of the survivor: [Here follows description of the property involved, it being only necessary to state that same consists of the alleged value of $15,550.00, and personal property consisting of cash in bank, United States bonds, bank stock, promissory notes, and vendor's lien notes, of the alleged value of $97.971.19].

"Wherefore, plaintiff Lydia Allen avers that, by reason of the facts hereinabove set

forth, she is entitled to the decree of this honorable court in all respects enforcing said contract and agreement of the said J. F. Mulkey, to the same extent with respect to his properties and the rights of the said Lydia Allen therein, as if said contract and agreement to adopt said plaintiff and to pass title to her to said properties had been fully carried out and performed.

"(6) That any claim of either of the defendants to any of the properties aforesaid was acquired upon voluntary consideration, and with full notice of plaintiffs' rights as herein set forth, and are completely subordinate thereto.

"(7) Should the plaintiff, Lydia Allen, be not entitled to the relief as hereinabove sought, then the said Lydia Allen and her children, Odessa Allen Wilson, Cyrene Allen Duff, Adell Allen Fowler and Fletcher Allen, come now and alternately seek relief as follows: They show to the court that on, to wit, August 8, 1923, the said J. F. and A. T. Mulkey did execute a written instrument which was not executed in the manner and with the formalities required to constitute same a valid will and testament, but which was and constituted an agreement into by and between them and in behalf of those plaintiffs, by the terms of which each undertook to convey to the survivor his or her interest in the aforesaid property, and that upon the death of the survivor their properties should go in a designated manner, and among the directions as given in said agreement was the direction that the following plaintiffs should be entitled to the following bank stock, to wit: Lydia and Charley Allen, $3,000.00 of Dallas Trust & Savings Bank stock; Odessa Allen Wilson, $2,000.00 of Dallas Trust & Savings Bank stock; Cyrene Allen Duff, $2,000.00 of Dallas Trust & Savings Bank stock; Adell Allen Fowler, $2,000 of Dallas Trust & Savings Bank stock; Fletcher Allen, $2,000 of Dallas Trust & Savings Bank stock; meaning, to the respective amounts, par value of said stock, which stock was, at the date of the death of either the said J. F. Mulkey or A. T. Mulkey, as well as continuously since and now, of the value of $155.00 per share; that is to say, $3,000 of said stock was and is of the value of $4,650; and $2,000.00 thereof was and is of the value of $3,100.00.

"That if for any reason the said Lydia Allen is not entitled to the specific relief hereinabove sought, then in any event she and her said husband and children are entitled to a decree vesting them with title to such an interest in the properties and estate of the said J. F. Mulkey and A. T. Mulkey as will be equivalent to the value of said bank stock, the title to which was intended and agreed to be given to them by the terms of said written agreement aforesaid.

"(8) That the defendants are denying and repudiating the rights of these plaintiffs as hereinabove set forth, and are claiming that the plaintiffs are entitled merely to the following respective interests in the estates of the said J. F. Mulkey and A. T. Mulkey, to wit:

"Lydia Allen $2,000.00, and Odessa Allen Wilson, Mrs. Cyrene Allen Duff, Mrs. Adella Allen Fowler, and Fletcher Allen, each the sum of $1,000.00; and the defendants, particularly the defendants Fletcher Mulkey, E. P. Hawkins and F. L. Hawkins, who are pretending to act as trustees of the estate of A. T. Mulkey, were threatening to distribute said estate when the injunction heretofore issued by the district court of Dallas county, Texas, restraining such action, became effective under the order of the court, to prevent said trustees from attempting to make any disposition of the property hereinabove described, as being the property of these plaintiffs, to which the defendants had no right or title at any time, and in which they at no time had, nor now have, any interest.

"(9) That if it shall appear upon the trial hereof that any of the properties aforesaid have been converted into cash or otherwise exchanged for or converted into other properties, plaintiffs are entitled to and should be decreed the same interest therein as if such original properties were still on hand and intact.

"Wherefore, plaintiffs pray that the injunction heretofore issued in this cause be continued in full force and effect and made perpetual, that upon trial hereof plaintiff, Lydia Allen, have judgment and decree for specific performance of the contracts and agreements of the said J. F. Mulkey, as hereinabove set forth, to adopt her as his child and for her to have his portion of said property, being one-half of the properties hereinabove particularly described, and vesting in the said Lydia Allen title to said property; and if for any reason the said Lydia Allen be not entitled to such relief, that she have judgment for the properties and the values thereof as awarded to her under the terms of said written instrument of August 8, 1923, as described in paragraph VII hereof, and that the remaining plaintiffs herein be likewise awarded judgment and decree for their portion of said properties as awarded to them under said written instrument of date, August 8, 1923. And plaintiffs pray that a partition and division be made setting apart to them and to each of them, in kind, the properties to which they or each of them may be further entitled, or if it be found that said properties or any portion of them are incapable of partition, that a sale thereof be had and plaintiffs' portion be set apart to them out of the proceeds of said sale. And plaintiffs pray for such other and further relief, general or special, legal or equitable, as may appear proper and as in duty bound will ever pray."

On the demurrer being sustained and ap-

pellants declining to amend, said cause was by the trial court dismissed, with costs adjudged against appellants. Appellants contend that the court erred in sustaining said general demurrer, because (a) that by the allegations of said petition a valid contract to adopt was made between Thomas Smith, father of appellant Lydia Allen, and J. T. Mulkey, which was enforceable at the instance of appellants, Mrs. Lydia Allen and her husband, C. L. Allen; (b) that the contract alleged to have been made by and between J. F. Mulkey and appellant Lydia Allen, after she had become a member of the family of the said J. F. Mulkey, that in consideration of her being and remaining in his home in the relation of child and parent she should receive, upon his (J. F. Mulkey's) death, or upon the death of his wife, should she survive him, all of his one-half of the community estate of himself and wife, alleged a good cause of action, enforceable at the instance of appellants Lydia Allen and husband, C. L. Allen; and (c) that by paragraph No. 7 of said petition a valid and enforceable cause of action was alleged in behalf of each one of the appellants for the respective sums of money therein alleged to have been contracted for and agreed upon by and between J. F. Mulkey and wife, A. T. Mulkey, that should be received by said appellants respectively under a contract by the terms of which said J. F. and A. T. Mulkey undertook to convey to the survivor his or her interest in the property described in said amended petition, and that upon the death of the survivor their said property should go in a designated manner, which agreement included appellants respectively, as alleged in said paragraph No. 7.

Appellees, countering the position of appellants in reference to the sustaining of said general demurrer, claim that same was properly sustained on the following grounds: (a) That the contract as alleged was void under the statute of fraud as to the real estate involved; (b) that cause of action pleaded in paragraph No. 7 of said petition, being based upon a written agreement testamentary in character, should not be enforced; (c) that the contract, as alleged to have been made by and between Thomas Smith and J. F. Mulkey, in regard to the possession and custody of said Lydia Allen, being contrary to public policy of the state of Texas, was therefore void; (d) that as to the contract alleged to have been made by J. F. Mulkey and appellant, Lydia Allen, acting for herself after she became a member of J. F. Mulkey's family, under the alleged contract to adopt, no consideration was alleged which would support the making of said contract, therefore, unilateral and unenforceable, even if same in fact constituted the making of an agreement between said parties, as alleged in said petition.

As appellees' propositions comprehend the entire case as presented by both appellants and appellees, we will discuss the case from appellees' standpoint in determining the rights of the parties under this appeal.

█ Appellees' counter proposition (a) will have to be sustained. Therefore, to the extent that appellants sought to enforce specific performance of the alleged contracts as to the real estate involved, the trial court did not err in sustaining the general demurrer; said contracts, as same relate to real estate, being condemned under the terms of the statute of frauds. Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216. By the seventh section of appellants' petition, a cause of action in the alternative is sought to be alleged in behalf of each appellant, respectively, founded upon a written instrument alleged to have been executed by the said J. F. Mulkey and wife, A. T. Mulkey (both deceased), on August 8, 1923, by the terms of which each undertook to convey to the survivor his or her interest in all of the property described in appellants' petition, and directed that, upon the death of the survivor, then said property should go in a designated manner, and that under the provisions thereof appellants were entitled to certain bank stock described in said section 7. As to this agreement, there was in effect alleged that same was not executed in the manner and with the formalities required to constitute same a valid will and testament, but which was and constituted an agreement entered into by and between said J. F. Mulkey and A. T. Mulkey in behalf of appellants. Its terms being given full force and effect, it can only be said that the legal import of said agreement, as alleged, was to convey the interest of the respective parties thereto in the property involved to each other, to take effect only on the demise of one of said parties, the title to all of said property then vesting in the survivor, and that during their lifetime each owned the same interest in said property as aforetime the making of said agreement, impressed with a provision testamentary in character, but not valid as a will, namely, that on the death of the survivor all of the property then on hand should go to and be received by the persons named therein as takers thereof in the respective interests, as provided for in said agreement, in which agreement was included appellants', as alleged in said section 7. In so far as the persons who were to take under said agreement, the Mulkeys, after the making of same, were at liberty to sell or otherwise dispose of said property to others, as under the terms of said agreement no character of title, right, or claim, enforceable at law or in equity, was acquired by or accrued to those designated in said instrument to receive said property on the death of the survivor. We therefore conclude that the general demurrer was properly sustained as to said section 7. Millican v. Millican, 24 Tex. 426; Belgarde v. Carter (Tex. Civ. App.) 146 S. W. 964.

█ As authority in support of their coun-

terproposition (c), appellees rely upon the holding in Hooks v. Bridgewater, supra. It is insisted that, under that authority, the contract alleged to have been made by Thomas Smith with J. F. Mulkey for the benefit of appellant Lydia Allen was void, as being contrary to public policy, in that the material provisions of the contract in the Bridgewater Case and that of the instant case are of the same legal import. We think the case at bar is distinguishable from the Bridgewater Case, in that the Bridgewater Case did not rest upon or involve a contract to adopt the plaintiff in that suit as an heir, but on a contract under the terms of which the father, S. A. M. Bridgewater, agreed to and did surrender the possession, custody, and control of his son, the plaintiff, to one John W. Davis, in consideration that said John W. Davis contracted and agreed to take, receive, and raise plaintiff, and to give plaintiff the care, attentions, and rights of a son, and further agreed, in consideration thereof, to make plaintiff his heir and leave to him all of his (the said John W. Davis') property at his death. See the petition on which the Bridgewater Case was tried, in Bridgewater v. Hooks (Tex. Civ. App.) 159 S. W. 1004.

In the instant case, the terms of the contract as alleged are that J. F. Mulkey would legally adopt Lydia Smith (the appellant Lydia Allen) as his child, under the name of Lydia Mulkey, she to become by such adoption a part of the Mulkey family, live with them as a member thereof, as if she were the own child of the said J. F. Mulkey and wife, A. T. Mulkey, with the further understanding and agreement that, "upon the death of the survivor of the said J. F. and A. T. Mulkey, the said Lydia should become entitled to the said J. F. Mulkey's one-half of the property, as if she were his natural child."

At the time of the making of this agreement in A. D. 1872, the law of "adoption" only provided for the manner in which a person could adopt another as his legal heir, and that the person so adopted should be entitled "to all of the rights and privileges, both in law and in equity, of a legal heir of the party so adopting him." Act Jan. 16, 1850, p. 36, c. 39. Therefore the effect of said contract by and between said Thomas Smith and J. F. Mulkey, in so far as same related to the adoption of said Lydia, was that he, J. F. Mulkey, would legally adopt said Lydia as his legal heir, and that as such heir she would be entitled to and would inherit all of his one-half interest in the community property of himself and wife, A. T. Mulkey. Without said additional agreement, the statutory adoption of the child Lydia, as well as her living with said Mulkeys as their natural child, would have been subject to the following provision of said act of 1850: "Provided, however, that if the party adopting such person have, at the time of such adoption, or shall thereafter have, a child * * * begotten

in lawful wedlock, such adopted child * * * shall in no case inherit more than one-fourth of the estate of the party adopting him."

Under the terms of said act, no absolute, vested right could be acquired by or passed to the party adopted in the estate of the adopting person, for there would remain with such person the right to make disposition by will or otherwise of all of his property, even to the complete exclusion of the adopted heir. Taylor v. Deseve, 81 Tex. 246, 16 S. W. 1008. Certainly said contract, in so far as J. F. Mulkey agreed to adopt the child Lydia as his child, was valid under the provision of said act of 1850.

Did the further agreement that said Lydia was "to become a part of the Mulkey family, live with them as a member of the family, as if she were the own child of said Mulkeys, with the understanding and agreement of the said J. F. Mulkey that, upon the death of the survivor of the said J. F. and A. T. Mulkey, the said Lydia should become entitled to the said J. F. Mulkey's one-half of the community property, as if she were his natural child," make said contract illegal and unenforceable? We think not. The effect of said provision was not to enlarge what would have been the rights of said Lydia as an heir by statutory adoption, but only to make certain that she would receive the property of said J. F. Mulkey, owned by him at his death, namely, one-half of the community estate of the said J. F. and A. T. Mulkey, as the same should exist at the death of the survivor, in that said J. F. Mulkey would not be able by will to deprive her of his said interest, as he would have the right to do under a purely statutory adoption. In fact, it only made that certain which, without said provision, would have been and remained uncertain throughout the life of said J. F. Mulkey, namely, said Lydia's right, on the performance of said contract by her, to receive the property of said J. F. Mulkey, in accordance with the provision of the alleged contract, although he should by his will dispose of his property, in whole or in part, to other persons. As we view the contract, it was not the dealing by a parent "with his child as property," or the bartering "his child away for a property return," as pronounced to be the effect of the contract in the Bridgewater Case, as the basis for holding that contract "void as a matter of public policy."

It is true that a parent has no property right in his child, as the term is applied to chattels, but by that higher law of parenthood has a more profound and abiding interest in his child, one that seeketh not the personal pleasure, well-being, and happiness of the parent, but that of the child; an interest so unselfish that, though the parent heart is rent by sorrow in the parting with a loved and lovable offspring, yet reason, guided by the promptings of unselfish devotion, will pre-

vail in behalf of the best interest of the child, and that, above all else, should be the guiding influence, and, when followed as the only consideration, should and will redound to the public good, as that which is for the best interest of the child should be, and no doubt is, always for the betterment of society. In dealing with the interest of a child, it should not be based upon sentiment alone, but upon the stern realities of life. Society certainly has more interest in a member thereof being brought up from early youth under benign, sustaining, capable, and pleasant surroundings than it has in its being brought up by any one under environments that would deny the child a reasonable opportunity to receive such care and attention as to best fit it to take its place in the walks of humanity, so as not to become a burden on, but a service to, society and the state; and certainly, where a parent is ill-prepared to look after his own child, he being the only one to succor and maintain the child, it cannot be said that, in looking out for the future of the child, the parent has acted in a way contrary to the public good, in so providing for the best interest of his child.

The parent suffers the pangs of sorrow that his child may escape the degradations and privations of poverty, the hardships that blight in early life the aspirations and hopes of youth. Primarily the parent suffers it all for the good of the child, but society is benefited thereby. Why should the child's life be made barren of the softening influences of a hospitable home, with people able, ready, and willing to supply its wants and needs, when the one most interested in the child is unable to so provide, and by reason thereof is willing to be deprived of the child's association, that the child may be thus benefited and brought up to become a useful and vaulable asset to society, instead of a liability? There can be no doubt but that it is to the best interest of a child to be brought up by its parents, when they are in position to reasonably care for, nurture, and bring up the child "in the way it should go," providing for it even the bare necessities of life, so long as it is provided with those things essential to the proper development of mind and body, but certainly the essential development of the child—morally, physically and mentally—should not be sacrificed for sentiment, against the will of those most interested in the child.

The opinion in the case of Legate v. Legate, 87 Tex. 248, 28 S. W. 281, is referred to and partly quoted in the opinion rendered in the Bridgewater Case, as authority for the holding in that case that the contract involved therein was void as a matter of public policy. In support of our conclusion herein, we quote the following from the Legate Case:

"The state, as the protector and promoter of the peace and prosperity of organized society, is interested in the proper education and maintenance of the child, to the end that it may become a useful instead of a vicious citizen; and while, as a general rule, it recognizes the fact that the interest of the child and of society is best promoted by leaving its education and maintenance during minority to the promptings of paternal affection, untrammeled by the surveillance of government, still it has the right in proper cases, to deprive the parent of the custody of his child, when demanded by the interests of the child and society.

"The one most vitally interested, however, in its custody, during the formative period of its character, is the one whose present and future happiness and tendencies towards good or evil will be most affected by its early environments, and its physical, mental, and moral training—the child itself. The right of the parent or the State to surround the child with proper influences is of a governmental nature, while the right of the child to be surrounded by such influences as will best promote its physical, mental, and moral development is an inherent right, of which, when once acquired, it cannot be lawfully deprived. Ordinarily, the law presumes that the best interest of the child will be subserved by allowing it to remain in the custody of the parents, no matter how poor and humble they may be, though wealth and worldly advancement may be offered in the home of another. Where, however, a parent, by writing or otherwise, has voluntarily transferred and delivered his minor child into the custody and under the control of another, as in the case at bar, and then seeks to recover possession of the child by writ of habeas corpus, such parent is invoking the exercise of the equitable discretion of the court to disrupt private domestic relations which he has voluntarily brought about, and the court will not grant the relief unless, upon a hearing of all the facts, it is of opinion that the best interest of the child would be promoted thereby. It is sometimes said that such a voluntary transfer is 'void,' or that it is 'contrary to public policy'; but the cases using such language show that it is not used in an absolute sense, but in the sense that such transfer is no impediment to the action of the court in determining what is best for the interest of the child. The law does not prohibit such a transfer, but, on the contrary, allows the child to reap the benefit thereof when it is to its interest so to do."

In the case of Cook v. Bybee, 24 Tex. 278, at page 281, Judge Bell used the following language:

"It is true that there are cases in which the father of a minor, after surrendering his control of his child's education, has not been permitted again to assert his right to such control; but those are cases where legacies were given, or donations made by third persons, to the minor, upon condition that the father would relinquish the control of the

minor's education, and where the father had acceded to the conditions imposed. There is nothing in the present case to place it in the class of cases just mentioned."

In the case of Byrne v. Love, 14 Tex. 81, at page 93, Judge Hemphill, in delivering the opinion for the court, said:

"There are cases in which the father or other guardian, as well by his acts as by his words, may renounce his guardianship; but these are where the infant or the parent receives some benefit by such renunciation in favor of another. Thus, where testators or other donors have bequeathed or given property to infants on condition, expressed or implied, that they should be under the management and control of persons different from their legitimate and natural guardians. If, in such case, the father or other guardian has expressly or impliedly acted on such will or gift, the court will appoint those guardians whom the donor has pointed out, and the father or other guardian cannot at a future time disturb an arrangement beneficial to the infant."

In the case of Clark v. West, 96 Tex. 437, 73 S. W. 797, 799, in the opinion of Judge Brown, the following language is used:

"The effect of the adoption of Louisa was to put her in the same attitude towards the adopting parents as if she had been their child."

For a case that strongly supports appellant's position on the question under discussion, see Jordan v. Abney, 97 Tex. 296, 78 S. W. 486, which is based upon a state of facts very similar to the allegations contained in appellant's petition. Also see Burroughs et al. v. Smith (Tex. Civ. App.) 294 S. W. 948.

If there could be any doubt as to the above decisions being sufficient to establish the policy of this state to recognize as valid a contract made by a parent, transferring parental authority and custody of the child to one adopting such child as an heir, certainly Acts 1907, p. 103, c. 47, as amended by Acts Third Called Session 1920, p. 115, c. 62, now article 44, Rev. St. 1925, declared the policy of the state to be in favor of such a transaction, namely:

"The parent or parents of a child who is to be so adopted may, by an instrument in writing duly signed and authenticated or acknowledged as deeds are required to be, transfer their parental authority and custody over such child to the adoptive parent. Where the lawful parent or parents have voluntarily abandoned such child and left it to the care of others for a period of at least three years, or voluntarily left it to be cared for by charity for a period of at least three years, and such child shall be so adopted, such parent or parents shall be held to have transferred their parental authority and custody over said child to the adoptive parent; and in all such cases such lawful parents shall there-

after be barred from exercising any authority, control or custody over the person or estate of such child as against the adoptive parent. No adoptive parent shall transfer his authority and custody to any other person."

Neither of the cases, Cook v. Bybee or Byrne v. Love, nor article 44, Rev. St. 1925, supra, were referred to in the Bridgewater opinion.

■ The contract, as made by the father of the child Lydia with J. F. Mulkey, being valid, as we have determined same to be, the contract alleged to have been made thereafter by the said J. F. Mulkey and said Lydia, acting in her own proper person, was but a confirmation or ratification of the contract made by her father in her behalf, and all subsequent statements made in reference to said Smith-Mulkey agreement, as alleged by appellants, were but a reaffirmation thereof, the Smith-Mulkey contract not being thereby in any respect impaired, altered, or changed by said subsequent contract or statements and that all acts of performance alleged on the part of appellant Lydia Allen are only referable to said Smith-Mulkey contract.

■ However, if it be conceded that said Smith-Mulkey contract was void, as contended by appellees, then the consideration upon which that contract was attempted to be made would furnish a sufficient consideration for the making of the contract by said Lydia with J. F. Mulkey, and, being performed by her, would be enforceable, as that would be the only contract in fact between said parties, and all acts of performance alleged by and on the part of said Lydia would be referable to and in consummation of the contract so made by her with said J. F. Mulkey. Under the Smith-Mulkey contract, if void, no obligation rested upon either the said Mulkey or the said Lydia to comply with its terms, as said contract would be in law as if it had never been made; therefore no act by either of said parties could be attributed to the performance of same after the making of a valid contract between said Lydia and J. F. Mulkey. Wold v. Wold, 138 Minn. 409, 165 N. W. 229.

For what reason or on what principle of social relationship can it be said that the contract under review is and "should be held void as a matter of public policy"—a contract, by the terms of which a little girl seven years of age, bereft of her mother, her father ill-prepared to look after her, was by her father delivered into the possession, care, control, and keeping of a husband and wife, childless, the husband having become so attached to the child as to desire to adopt her, and agreed to do so as his child, and to receive her into his family as a member thereof as if she were his natural child; was financially able to supply all of her needs and reasonable wants, and to be brought up under

the care of himself and wife, with the understanding and agreement of the said J. F. Mulkey that "upon the death of the survivor of the said J. F. and A. T. Mulkey the said Lydia should be and become entitled to the said J. F. Mulkey's one-half of the property as if she were his natural child"?

It seems to us that what was to be accomplished for and in behalf of the child Lydia should determine the answer, namely, that no reason could exist for holding said contract void as a matter of public policy. In the following cases, from other jurisdictions, a like contract was held not to be void, but enforceable, at the suit of the child in whose behalf the contract was made: Signaigo v. Signaigo (Mo. Sup.) 205 S. W. 23; Healey v. Simpson, 113 Mo. 340, 20 S. W. 881; Eggstaff et al. v. Phelps, 99 Okl. 54, 226 P. 82; Roberts v. Roberts (C. C. A.) 223 F. 775 (Mo.); Sharkey v. McDermott et al., 91 Mo. 647, 4 S. W. 107, 60 Am. Rep. 270; Bassett v. American Baptist Publication Society et al., 215 Mich. 126, 183 N. W. 747, 15 A. L. R. 213; Starnes et al. v. Hatcher et al., 121 Tenn. 330, 117 S. W. 219; Steinberger v. Young, 175 Cal. 81, 165 P. 432; Winne v. Winne, 166 N. Y. 263, 59 N. E. 832, 82 Am. St. Rep. 647; Brinton v. Van Cott, 8 Utah, 480, 33 P. 218; Oles v. Wilson, 57 Colo. 246, 141 P. 489; Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 Am. St. Rep. 420; Sutton v. Hayden, 62 Mo. 101.

[5] It is contended by appellees that the terms of the contract, as alleged to have been made between Thomas Smith and J. F. Mulkey, are so uncertain and ambiguous that specific performance thereof should not be decreed. In other words, too indefinite a statement for a court of equity to consider entering a decree to compel its specific performance; therefore the demurrer was rightfully sustained. A careful analysis of the petition has led us to a different conclusion, in that we think the rule announced in Wells v. Fairbank, 5 Tex. 582, 584, is applicable to this case, namely:

"But although a statement of the facts is indispensable, it is not necessary to state such circumstances as constitute merely the evidence of those facts. The simple allegation of the fact is sufficient, without detailing a variety of minute circumstances which merely conduce to prove the truth of it. To require all those circumstances which constitute but the evidence of facts, to be stated, would lead to inconvenient detail and intolerable prolixity in pleading; and it would be to require that which must often be impracticable; and if attempted, hazardous to the rights of the party; for it is not always possible for the pleader to know, in advance, precisely what his evidence will be; and a variance might be fatal to his cause. Hence the necessity of adhering to the rule that what is merely the evidence of facts need not be stated. * * * This can only be done by keeping in view and maintaining the rule we have indicated; the consequence of which is, that, if the fact be pleaded, the evidence of such fact may be submitted to the jury, although not specially developed in the pleading, by a detail of all the attendant circumstances."

See, also, Tippett v. Gates (Tex. Civ. App.) 223 S. W. 705.

As to the child Lydia, it was alleged that her father, Thomas Smith, consented that the said J. F. Mulkey might legally adopt said child under the name of Lydia Mulkey; that she was to become a part of the Mulkey family, and live with them as a member of the family, as if she were the own child of the said Mulkeys; that in consideration that said Smith would surrender said child Lydia to the possession and care of the said J. F. Mulkey, for the purposes above stated, said Mulkey and wife to have the exclusive and full custody and control of her, that the said Mulkeys would rear said child as their own, and that he, the said J. F. Mulkey, would give said Lydia his one-half of all the property belonging to himself and wife, to be received by her upon the death of the survivor of the said J. F. and A. T. Mulkey; that said contract was made in about the year A. D. 1872; that under said contract, the said Lydia was delivered and received into the custody and control of the said Mulkey and wife; that she performed all of the services and duties proper to be performed by a daughter to the said J. F. Mulkey, and continued to live with said Mulkeys as their daughter until the 16th day of October, 1887, when, with the full consent of the said J. F. Mulkey, she became the wife of one C. L. Allen.

In our opinion, from the above allegations, it appears that the contract was in fact made on a valuable consideration in behalf of and for the use and benefit of the said child Lydia; that said contract was performed on the part of said Lydia, in that the acts of performance alleged on her part are referable solely to the existence of said contract, and for the purpose of performing same, and that to deny her specific performance thereof would perpetrate a fraud upon her. Rosenwald v. Middlebrook et al., 188 Mo. 58, 86 S. W. 200.

We are of opinion that the general demurrer, in so far as the appellant Lydia Allen, by her suit sought to recover the interest of the said J. F. Mulkey in the personal property constituting part of the community estate of the said J. F. and A. T. Mulkey, deceased, was improperly sustained; therefore, on that ground, the judgment of the court below, sustaining appellees' demurrer, should be reversed, and cause remanded; and it is so ordered. Reversed and remanded.

### On Appellant's Motion to Set Aside a Certain Holding and Modify Opinion.

Appellants Lydia Allen and husband, C. L. Allen, bottom this motion on the proposition

that the court erred in holding that the contract between Thomas Smith and J. F. Mulkey violated the statute of frauds, and request that the opinion of the court so holding be set aside and modified in that respect.

Appellants declared upon three contracts, namely, one as having been made by and between Thomas Smith and J. F. Mulkey, and one between Lydia Allen and J. F. Mulkey, the identity and terms of which were not presented with that clarity and particularity in the original opinion as perhaps was necessary to present the proper force and effect of said contracts, respectively, without the confusion of the terms thereof. The first contract begins with the words, "On or about the year 1872, when plaintiff was a child of tender years, not more than seven years of age, J. F. Mulkey entered into a written contract with Thomas Smith, the natural father of plaintiff Lydia, by the terms of which contract the said J. F. Mulkey specifically in writing contracted and agreed with the said Thomas Smith that if he, the said Thomas Smith, would surrender the child Lydia," and closes with the words, "that plaintiff should receive the said J. F. Mulkey's part of the property at the death of the survivor of himself and his said wife, the delivery of said child and the custody of her was given over to the said J. F. Mulkey and his wife and thereby said written contract on the part of the said Thomas Smith became fully executed." And the second contract begins with the words, "Thereafter [referring to the making of the contract by Thomas Smith and J. F. Mulkey], while the child Lydia, plaintiff herein, was living in the family of the said J. F. Mulkey and wife, as their daughter, and bestowed upon them all of the affections of a daughter, and performed all of the services and duties proper to be performed by a daughter, specifically and definitely agreed with said plaintiff," and closes with the following words: "And that said contract and understanding and agreement between said plaintiff and the said Mulkey were repeatedly reaffirmed by the said J. F. Mulkey, through expressed agreements, declarations and course of conduct." The third contract is the one alleged to have been made August 8, 1923, in writing, beween J. F. Mulkey and A. T. Mulkey, by the terms of which certain property was designated to be received by appellants in the respective amounts, as stated in the original opinion; this being the contract held to be testamentary in character and not enforceable. The first contract is alleged to be in writing; as to the second, it is not alleged whether it was in writing or rested in parol; and the third is not before us at this time for further consideration.

The following allegation contained in section 3 of appellants' petition certainly does not refer to or include the first contract alleged specifically to be in writing, but only to the contract not alleged to be in writing, namely: "Said agreements and contracts were, as these plaintiffs believe and allege the facts to be, partly oral and partly in writing."

We have not been cited to, nor have we been able to find, any rule of law holding that a contract required to be in writing, in order to take a transaction out of the statute of frauds, may be partly written and partly oral. The terms of the statute, namely, article 3995, Rev. St. 1925, that "no action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized," excludes the idea that a contract partly in writing and partly oral would be sufficient to meet its requirements.

We have not been able to find a case specifically determining this question; however, we think the following decisions, based upon an effort to modify a contract required to be in writing by a parol agreement, are authority for holding that, where a contract is required, under the statute of frauds, to be in writing in order for a cause of action to be maintained thereon, a contract partly written and partly oral will not meet the requirements of the law. Beard v. A. A. Gooch & Son, 62 Tex. Civ. App. 69, 130 S. W. 1022; Gurley v. Hanrick's Heirs (Tex. Civ. App.) 139 S. W. 721, in which it is held, "Nothing short of a subsequent contract in writing, meeting the requirements of the statute, can change a written agreement showing whose interest is to be charged with a conveyance of part of the land owned by tenants in common;" Adams v. Hughes (Tex. Civ. App.) 140 S. W. 1163; Burgher & Co. v. Canter (Tex. Civ. App.) 190 S. W. 1147, in which it is held a written agreement to secure subtenants for a five-year term could not be modified by a parol agreement to accept tenants for a term of four years and eleven months; Gardner v. Sittig (Tex. Com. App.) 222 S. W. 1090; Kistler v. Latham (Tex. Com. App.) 255 S. W. 983; Reed v. Watson (Tex. Civ. App.) 262 S. W. 178.

It is true that it was not necessary for appellants to have alleged that the contracts, or either of them, declared upon, were in writing, though their form and character were within the statute of frauds; this because whether the contracts declared upon were within the statute was a matter of proof, and not to be determined through the office of a general demurrer. James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Cross v. Everts, 28 Tex. 525; Horm v. Shamblin, 57 Tex. 243; Gonzales v. Chartier, 63 Tex. 36; Carson Bros. v. McCord-Collins Co., 37 Tex. Civ. App. 540, 84 S. W. 391.

However, where a contract declared

upon is one that is required by the statute of frauds to be in writing, and it is alleged or affirmatively appears from the allegations of the petition that the contract is not in writing, a general demurrer is available to prevent the further prosecution of the cause of action based thereon, as it would appear from the petition that plaintiff was not entitled to invoke the action of the court to enforce same.

 It is due to the other members of the court to state that in consultation over this cause it was determined that the demurrer was improperly sustained as to the contract alleged to be in writing, and properly sustained to contract designated herein No. 2, in so far as appellants sought to enforce specific performance thereof as to the real estate involved, as the allegation that "said agreements and contracts were * * * partly oral and partly in writing," applying to said contract, was in effect an allegation that same was not in writing. This conclusion the writer, through inadvertence or oversight, failed to express in the opinion prepared for the court, and he assumes sole responsibility for the erroneous holding complained of, namely: "Appellee's counter proposition (a) will have to be sustained. Therefore, to the extent that appellants sought to enforce specific performance of the alleged contracts as to the real estate involved, the trial court did not err in sustaining the general demurrer, said contracts, as same relate to real estate, being condemned under the terms of the statute of frauds"—and same is deleted from said original opinion, and instead thereof we hold that the general demurrer was properly sustained as to the contract herein designated No. 3, and to the allegations based upon contract herein designated No. 2, only in so far as appellants sought to enforce specific performance of said contract No. 2 as to the real estate involved (Hooks v. Bridgewater, 111 Tex. 122, 229 S. W. 1114, 15 A. L. R. 216), and was erroneously sustained as to the allegations of appellants' petition based upon contract herein designated No. 1, and in this respect said original opinion is modified and corrected.